◼ PETER PENDIAS, Appellant-Respondent, v 3 EAST 69TH STREET ASSOCIATES et al., Respondents-Appellants.—Judgment of the Supreme Court, New York County (Kenneth L. Shorter, J.), entered September 20, 1985, after a bench trial, which, *inter alia*, (1) declared that, commencing on or after October 1, 1985, defendants landlords are entitled to recover from the plaintiff possession of apartment 6-D, located in 3 East 69th Street, New York County; and, (2) declared, in the trial court's written decision which was made a part of this judgment, that since 1974 the subject apartment has been the plaintiff's primary residence, is unanimously modified, on the law and on the facts, only to the extent of deleting that portion of the decision that declares that since 1974 the subject apartment has been the primary residence of the plaintiff, and, instead, substituting the declaration that the subject apartment was never the primary residence of the plaintiff, and otherwise affirmed, without costs.

Defendants are the landlords, owners and managing agent of 3 East 69th Street, located in New York County, which is a residential apartment building (building), subject to the Rent Stabilization Law of 1969 (Administrative Code of City of New York, ch 51, tit YY). Plaintiff Peter Pendias is the son of Orestes (Mr. Pendias) and Cleopatra Pendias (Mrs. Pendias).

Before 1974, the Pendias family lived in a house that they owned in Greenwich, Connecticut.

Since Mr. Pendias' place of employment was located in New York City, he desired to reduce his commuting time. Therefore, in February 1974, he entered into a written rent-stabilized lease for apartment 6-D (apartment) in the building. Even though Mr. and Mrs. Pendias now live in this apartment, they did not give up their Connecticut home, which they visited on weekends and in the summer. Incidentally, Mr. and Mrs. Pendias allegedly never filed New York City resident income tax returns.

From 1972 to 1976, while he attended Boston College, plaintiff primarily resided in Boston, Massachusetts. During his college years, plaintiff spent his vacations in either his parent's Connecticut home or their New York apartment. Subsequent to his graduation in 1976, plaintiff spent more time in the apartment, in view of the fact that he was employed in New York City.

In 1978, Mr. Pendias died. Following the death of her

husband, Mrs. Pendias entered into a renewal lease concerning the apartment for a term, commencing on October 1, 1978 and ending on September 1, 1980. This lease was in Mrs. Pendias' name, and it listed her as the sole tenant of the apartment. Although Mrs. Pendias had renewed the lease, by the end of 1978 she had moved back to the family home in Connecticut, and thereafter only rarely visited the apartment. When the building underwent a noneviction cooperative conversion in 1980, Mrs. Pendias declined to purchase the shares allocated to the apartment. However, notwithstanding the fact that she was residing in Connecticut, when the renewal lease, mentioned *supra,* expired, Mrs. Pendias executed a second renewal lease for another two years.

This second renewal lease expired on September 30, 1982, and the defendants refused to offer Mrs. Pendias any more leases, upon the ground that, by the act of relocating to Connecticut, Mrs. Pendias had vacated the apartment. In response to defendants' denial of a lease, Mrs. Pendias commenced the instant action for a declaratory judgment declaring the rights of the respective parties in relation to the apartment. Following the service of the defendants' answer, the parties stipulated to amend the complaint to substitute Peter Pendias, as the plaintiff, in place of his mother. Thereafter, the defendants answered this amended complaint.

After a bench trial, the Trial Court held, *inter alia:* (1) that Mrs. Pendias had abandoned the use of the apartment as her primary residence in 1978; (2) in view of the fact that plaintiff had occupied the premises as his primary residence since 1974, he could continue to reside there for the remainder of the current lease term, but he was not entitled to a renewal lease; and, (3) at the end of the current lease term, the defendants were entitled to the possession of the apartment.

Based upon the overwhelming evidence in the record, we find that the trial court erred insofar as it held that plaintiff's primary residence was the New York apartment.

Although the trial court found that plaintiff has primarily resided in the subject apartment since 1974, the plaintiff, himself, concedes, in the amended complaint, that he did not commence living in that apartment until 1976, which was after he graduated college.

The test to determine whether a tenant is occupying a New York rent-stabilized apartment as a primary residence is found in Code of the Rent Stabilization Association of New York City, Inc. (Code) § 54 (E). Under the Code test, proof of

primary residence requires the evaluation of a number of factors such as: (a) did the tenant file a New York City resident income tax return?; (b) did the tenant list the subject apartment as his place of residence in any tax return, motor vehicle registration, driver's license or other document filed with a public agency?; and, (c) did the tenant give an address other than the subject apartment as his voting address? When we apply these Code test questions to the facts about the plaintiff contained in the record, we conclude that this apartment was never plaintiff's primary residence. This conclusion is based upon the following testimony of the plaintiff at the trial:

(1) plaintiff testified that since 1968 he has had a Connecticut driver's license;

(2) plaintiff testified that since 1972 he has been registered to vote in Connecticut;

(3) plaintiff testified that, for the years 1978-1982, he did not file New York City or State income tax returns, since "There is no State Income Tax in Connecticut, so it was cheaper for me to file in the State of Connecticut. I was not aware that I had to file [returns in New York] until 1983 to retain my primary resident status"; and,

(4) plaintiff testified that he never had any electrical or telephone service furnished to him under his own name at the apartment.

Accordingly, we modify the judgment, insofar as to delete the trial court's declaration that since 1974 the subject apartment has been the primary residence of the plaintiff, and substitute the declaration that the subject apartment was never the primary residence of the plaintiff. Concur—Kupferman, J. P., Sullivan, Ross, Carro and Fein, JJ.