CHARLES METZENDORF, Respondent-Appellant, v 130 WEST 57
COMPANY, Appellant-Respondent.

First Department, December 15, 1987

### APPEARANCES OF COUNSEL

*Jeffrey R. Metz* of counsel *(Finkelstein, Borah, Schwartz, Altschuler & Goldstein, P. C.,* attorneys), for respondent-appellant.

*Allen H. Brill* of counsel *(Anthony H. Benjamin* with him on the brief; *Brill, Meisel & Cross,* attorneys), for appellant-respondent.

### OPINION OF THE COURT

Per Curiam.

Defendant landlord appeals from that portion of an order and judgment which, in a declaratory judgment action, granted the cross motion of the plaintiff tenant for partial summary judgment determining that the duplex suite 9-10D (the premises) located on the ninth and tenth floors of the building located at 130 West 57th Street in Manhattan was covered by the Rent Stabilization Law, that the tenant was entitled to recover rental overcharges and attorneys' fees and other relief relating to the striking of the landlord's affirmative defenses and counterclaims, and denied the landlord's cross motion to dismiss the complaint or, alternatively, for summary judgment.

The building housing the premises is a class "A" multiple

dwelling located in a Special Purpose District within a restricted central commercial area designated CS-3.5, virtually next door to Carnegie Hall. It contains 3 commercial stores on the ground floor and basement, and 14 floors of mixed business and residential units. Of the 54 units in the building, 10 are purely residential, including one occupied by the superintendent on the ground floor.

Plaintiff Charles Metzendorf has been, during the period here relevant, a principal and officer of Metzendorf Brothers, Inc., a bakery supply business. The business, located in Edison, New Jersey, has a 50,000 foot warehouse and offices, 150 employees, and 30 trucks for the purpose of making deliveries to its numerous customers in the tristate area. On October 1, 1977, plaintiff executed a standard form of office lease, for a three-year term, which provided in its rider: "Premises are rented to the tenant for the purpose of the business carried on by the tenant. Tenant shall have the right to use some portion of these premises for residential purposes, providing the use made by the tenant for residence shall not change the predominantly commercial use thereof." The tenant was given permission under the terms of the lease to make only such alterations and improvements which were not structural, and did not affect utility services or plumbing and electrical lines. The lease was renewed two times, on the same terms, at rents increasing from the initial $1,500 per month in 1977, to $3,400 per month in a two-year lease commencing October 15, 1983.

During the period covered by the successive leases the tenant claims that he expended $150,000 making improvements to the premises, "creating from what was a shambles into a beautiful four-bedroom duplex apartment containing 2,100 square feet, four bedrooms, three bathrooms, and a living room with a 26 foot ceiling." In September 1985, when the last lease was about to expire, the landlord demanded an increase in rent from $3,400 per month to $6,800 per month. This prompted the tenant to retain counsel to ascertain and protect whatever tenancy rights he might have. The tenant thereafter demanded of the landlord that by virtue of his having used the premises solely for residential purposes, he was entitled to a renewal lease under the prevailing rent stabilization guidelines. The landlord rejected this demand. The tenant then commenced the within action seeking a declaration of the parties' rights.

In his action, the plaintiff tenant sought and obtained preliminary injunctive relief prohibiting his eviction pending

trial. Plaintiff claimed in his verified complaint that the landlord "knew or should have known" that the premises were to be occupied for residential purposes only, that he did occupy the premises for residential purposes only, and that he was therefore entitled to continued possession as a rent-stabilized tenant. He sought a declaration to that effect, an equitable reformation of his lease, a return of past rentals in excess of rent-stabilized rentals, damages for fraud, and attorneys' fees.

Defendant landlord raised several affirmative defenses and counterclaims which, excluding those abandoned on appeal, claimed that if the tenant occupied the premises solely as a residence he did so without the landlord's knowledge and consent and in violation of the various leases, that the tenant made structural alterations in violation of the leases, that tenant is not entitled to a renewal lease even if he did occupy the premises solely for residential purposes because the premises were not occupied as the tenant's primary residence, and for damages based on illegal holdover. Cross motions for summary judgment were consolidated, and resolved almost entirely in favor of the tenant.

It is elemental that a tenant cannot sign a commercial lease for premises that have a long history of primarily commercial use, and unilaterally change the character of the premises from commercial to residential simply by surreptitiously creating a "beautiful four-bedroom duplex apartment containing 2,100 square feet, four bedrooms, three bathrooms, and a living room with a 26 foot ceiling" through extensive structural alterations which are explicitly prohibited in every lease executed by the tenant. It is equally elemental that a landlord cannot rent premises under a commercial lease with full knowledge that the tenant intends to convert the premises to solely residential use as his primary residence, to thereafter knowingly permit such use for eight years, and thereafter avoid the protections afforded to residential tenants under the Rent Stabilization Law and Emergency Tenant Protection Act. *(See, e.g., Mandel v Pitkowsky,* 102 Misc 2d 478, *affd* 76 AD2d 807.)

Lydia Jedwabnik was the managing agent for the building, and a principal of the landlord, and she dealt with the tenant when he first rented the premises in 1977. In her affidavit in support of the landlord's cross motion for summary judgment, she alleged that the history of the premises was primarily commercial, and that the parties understood and agreed that

the tenant's occupancy was to remain primarily commercial in character. "Mr. Metzendorf went out of his way to explain to me that because he was involved in a family-owned bakery supplies business located in New Jersey which operated in and around New York, he could and would be using the premises as his office." She noted that the tenant listed in his rental application both his current business address in New Jersey, and his current residential address in New Jersey, and that he thereafter represented to the Middlesex County Board of Elections that he had just relocated his primary residence to 18 Harbor Terrace in Perth Amboy, New Jersey.

Mrs. Jedwabnik further claimed that the extensive alterations were not "fully known" to her and were done "either surreptitiously or in a manner that was certain to conceal them from my attention." Finally, she alleged that the tenant installed a special combination lock on his door which prevented her and the building staff from gaining access to the premises, and that the extent of the alterations and the nature of the occupancy first became known in September 1985 during an inspection of the premises by Mira Van Doren, another principal of the landlord.

In opposition to the aforesaid affidavit, and in support of his cross motion for summary judgment, the tenant alleged that "The landlord knew from the inception of my tenancy to date that the premises were to be used for solely residential purposes and I have used same for residential purposes from the inception of my tenancy to date." He further alleged that the premises were residential in character at the commencement of his tenancy, that all the alterations made by him were nonstructural in nature, and that they were done with the knowledge and implied consent of the landlord. We accordingly find that the papers submitted on the cross motions for summary judgment raise factual issues regarding the actual agreement between the parties which can only be resolved at trial. (See, Haberman v Wright, 121 AD2d 187.)

The next question presented is whether the landlord should have been granted summary judgment on its fifth affirmative defense. The landlord's fifth affirmative defense claimed that even if tenant's residential occupancy with the landlord's consent were established, the tenant did not occupy the premises as his primary residence, but rather maintained his primary residence at 18 Harbor Terrace, Perth Amboy, New Jersey, since prior to October 1977, and that he was therefore not entitled to a renewal lease under the Rent Stabilization

Code. It was alleged that the tenant was registered to vote in New Jersey and had designated the Perth Amboy address as his primary residence for voting purposes, that he maintained a New Jersey driver's license and personal bank account in New Jersey, that he filed State income taxes as a New Jersey resident and had not filed New York State or New York City income taxes during the periods relevant herein. The landlord established most of the aforementioned facts by documentary evidence on its motion for summary judgment.

The tenant admitted using the Perth Amboy address solely for voting, driver's license and tax purposes "as a matter of convenience." He claimed ignorance throughout the eight-year period of his tenancy of the fact that courts and administrative agencies looked to these factors to determine primary residence, and stated his "intention in the future to have all voting registration, driver's license and other filings made at the subject premises."

Up until June 16, 1983, section 54 of the Code of the Rent Stabilization Association of New York City, Inc. (the Code) provided that:

"The owner shall not be required to offer a renewal lease to a tenant only upon one of the following grounds * * *

"E. Dwelling units not occupied as tenant's primary residence on or after May 1, 1972.

"(1) The owner has established by facts and circumstances which in the judgment of the Conciliation and Appeals Board may have a bearing upon the question of residence, that the tenant in possession maintains his primary residence at some place other than at such housing accommodations.

"(2) In making such determination the Conciliation and Appeals Board shall give due consideration to any facts and circumstances establishing that the housing accommodation is not the tenant's primary residence, including, but not limited to, the fact that such tenant (i) specified an address other than such housing accommodation as his place of residence in any tax return, motor vehicle registration, driver's license or other document filed with a public agency, (ii) gives an address other than such housing accommodation as his voting address, or (iii) assigns and/or sublets such housing accommodation."

Effective June 16, 1983, section 54 (E) (2) of the Code was amended to add the following language to that set forth above: "Provided, however, that the Conciliation and Appeals Board shall not find that the housing accommodation which is sub-

ject to this Code is the primary residence of the tenant unless the tenant is either domiciled in the City at the claimed housing accommodation or, if not domiciled in the City, the tenant spent an aggregate of more than one hundred eighty-three days in the preceding calendar year in the City at such accommodation * * * and, in either event provides proof satisfactory to the Conciliation and Appeals Board that the tenant either filed a New York City Resident Income Tax Return at the claimed primary residence for the most recent preceding taxable year for which such return should have been filed or that the tenant was not legally obligated to file such tax return".

■ Thus, while several of the factors pertinent to primary residence continued to warrant "due consideration" under the amended Code, the tenant was *required* to show that he filed a New York City resident income tax return at the claimed primary residence for the most recent preceding taxable year such return should have been filed unless the tenant was not legally obligated to file such a tax return. *(Newport Apts. Co. v Schechter,* 124 Misc 2d 760, 763-764, *affd* 127 Misc 2d 793.) Clearly, the tenant's "convenience" does not qualify as a legal excuse for his failure to file tax returns from his actual residence. *(Cf., Matter of Rose Assocs. v State Div. of Hous. & Community Renewal,* 121 AD2d 185.)

The final question presented is whether the landlord's fifth affirmative defense, alleging that the premises were not the tenant's primary residence, was appropriately dismissed (without prejudice) for failure to comply with the 30-day notice requirements of section 5 (a) (11) of the Emergency Tenant Protection Act of 1974 (ETPA; L 1974, ch 576, § 4, as amended) and section YY51-3.0 (a) (1) (f) of the Administrative Code of the City of New York (New York City Rent Stabilization Law [RSL]). *(See, Sutton Assocs. v Bush,* 125 Misc 2d 438, *affd* 108 AD2d 1106, *lv denied* 65 NY2d 606.) The 1983 amendments to the aforesaid provisions of the ETPA and RSL (L 1983, ch 403, §§ 55, 41) provided, as here pertinent, that "No action or proceeding shall be commenced seeking to recover possession on the ground that a housing accommodation is not occupied by the tenant as his primary residence unless the owner or lessor shall have given thirty days notice to the tenant of his intention to commence such action or proceeding on such grounds." *(See,* Rent Stabilization Code [9 NYCRR] § 2524.4 [c], eff May 1, 1987; *see also,* Kastner and

Zuckerbrod, *Primary-Residence Litigation—Analysis of Emerging Case Law,* NYLJ, Mar. 25, 1987, at 1, col 3.)

■ The landlord urges that it did not commence an action or proceeding to recover possession of the premises on the ground that the premises were not occupied by the tenant as his primary residence, and that therefore the requirement that the landlord give notice of its intention to commence such an action is inapplicable in the procedural context here presented. However, we hold that if it should be determined after trial that the landlord did in fact rent the premises to the tenant with knowledge that the premises would be used by the tenant primarily for residential purposes, or renewed the most recent lease with knowledge of such use by the tenant, then the landlord cannot be excused from the 30-day notice requirement contained in the aforestated provisions of the ETPA and RSL. We do not address the possible application of section 60 of the Code (now Rent Stabilization Code [9 NYCRR] § 2524.2 [c] [2]) requiring that a landlord notify the tenant of the renewal or nonrenewal of a lease not more than 150 days and not less than 120 days prior to the expiration date *(see, Crow v 83rd St. Assocs.,* 68 NY2d 796) since the issue was not raised in the court below.

Accordingly, the order and judgment (one paper) of the Supreme Court, New York County (Francis N. Pecora, J.), entered October 6, 1986, should be modified, on the law, without costs, to deny the tenant's cross motion for partial summary judgment, and otherwise affirmed.

SANDLER, J. P., SULLIVAN, MILONAS, ELLERIN and WALLACH, JJ., concur.

Order and judgment (one paper) of the Supreme Court, New York County, entered on October 6, 1986, unanimously modified, on the law, without costs and without disbursements, to deny the tenant's cross motion for partial summary judgment, and otherwise affirmed.