In the Matter of STAHL ASSOCIATES COMPANY, Appellant, v STATE DIVISION OF HOUSING AND COMMUNITY RENEWAL, OFFICE OF RENT ADMINISTRATION et al., Respondents.

First Department, June 20, 1989

## APPEARANCES OF COUNSEL

*Jeffrey R. Metz* of counsel *(Finkelstein, Borah, Schwartz, Altschuler & Goldstein, P. C.,* attorneys), for appellant.

*Jan C. Rose* of counsel *(Dennis B. Hasher,* attorney), for State Division of Housing, respondent.

*Barry J. Yellen* of counsel *(Yellen & Kahn,* attorneys), for Sidney Reiss, respondent.

### OPINION OF THE COURT

SULLIVAN, J.

At issue is the propriety of an administrative determination denying a landlord's application for an order of decontrol on the ground the apartment in question was not occupied by respondent, the tenant of record, as a primary residence.

Petitioner, the owner of an apartment building at 405 East 54th Street, in Manhattan, filed an application on November 9, 1982 with the City of New York Department of Housing Preservation and Development, Office of Rent and Housing Maintenance, Rent Control Division (District Rent Office) for an order decontrolling apartment 7-Q, a housing unit subject to the Rent Control Law, pursuant to former section 18 of the New York City Rent and Eviction Regulations. Petitioner claimed that respondent had not been seen in the building by its employees and that he was primarily residing in Stoneridge, Connecticut. Respondent answered on January 3, 1983 and denied that he ever resided in Connecticut. Petitioner replied, explaining that the reference to Connecticut was erroneous and that respondent primarily resided in Stoneridge, New York.

On July 18, 1983, the District Rent Administrator mailed a notice to respondent at his apartment requesting him to submit documentary evidence which would demonstrate that he primarily resided at the apartment, including, but not limited to, copies of his 1981 and 1982 Federal, State and city income tax returns. The notice was returned, undelivered, with the notation, "moved, not forwardable. Return to Sender".

On August 24, 1983, the District Rent Administrator issued an order of decontrol, which respondent protested. In a supporting affidavit respondent noted that he had "no explanation" as to why the post office had returned the District Rent Administrator's notice. Respondent argued that the Stoneridge house was only a "vacation retreat" and that, in any event, a hearing was necessary. The protest was denied by order and opinion, dated February 6, 1985, which, in pertinent part, stated:

"During the course of the appeal proceeding, by a Notice dated December 12, 1984, the tenant was requested to submit copies of his 1980, 1981, 1982 and 1983 New York State Tax Returns. In response to this Notice, the tenant submitted copies of his 1981, 1982 and 1983 New York State Tax Returns. The 1981 return listed the tenant's address as Stoneridge, New York and indicated that the tenant's residence was in Ulster County. * * *

"Section 2200.16 of the Rent Regulations (formerly Section 18) is the so-called 'primary residence' decontrol provision of the Rent Regulations and provides that a housing accommodation shall be decontrolled where the Commissioner determines that the tenant maintains his primary residence at a place other than at the housing accommodation in question. Paragraph 'b' of this section (formerly paragraph 'b' of Section 18) further provides that the Commissioner shall *not* find that the housing accommodation in question is the primary residence of the tenant unless the tenant provides satisfactory proof that he either filed a New York City Resident Income Tax return for the most recent preceding taxable year for which such return should have been filed or was not legally obligated to file such a return due to residency in [a] foreign country or employment by a foreign government or international organization, or because the tenant's income was below that required for the filing of a return.

"In the instant matter, the decontrol application was filed in 1982. Therefore, the subject accommodation may not be found to be the primary residence of the tenant unless the tenant establishes that he satisfied the tax 'status' requirements of paragraph 'b' of Section 2200.16 for the tax year 1981.

"As stated above, during the proceeding on appeal, the tenant submitted a photocopy of his 1981 New York State Income Tax Return. This return listed the tenant's address as Stoneridge, New York, indicated that his residence was in Ulster County and showed income in excess of the minimum required for the filing of a return. Thus, for the year 1981, the tenant did not file a New York City Resident Income Tax Return and was not excused from such a filing by any of the reasons set forth in section 2200.16." (Emphasis in original.)

Respondent challenged this determination in a CPLR article 78 proceeding, as a result of which, on February 11, 1986, the matter was remitted to the Division of Housing and Commu-

nity Renewal (DHCR), the successor agency to the District Rent Office, "for further consideration". At a hearing held on June 12, 1986, some 3½ years after petitioner filed its decontrol application, respondent produced various documents, such as tax returns for 1982-1985 (unsigned and made by a tax preparer), a 1985 driver's license, a 1984 voter registration card listing the subject apartment, and telephone bills for various months from April 1983 through April 1986. Significantly, the bills through September 1984 list respondent's mailing address as Box 389, Stoneridge, New York. Respondent also submitted two laundry tickets, one dated May 1, 1982, the other March 30, 1983, some 11 months later, for a concern located at 334 East 54th Street. Bank statements were also submitted indicating the Manhattan address. Additionally, respondent submitted two current charge cards from department stores showing the same address.

Two witnesses testified at the hearing in petitioner's behalf. Jean Burg, the resident manager since 1967, who not only lives in the building but has an office on the ground floor which she occupies from 9:00 A.M. to 4:30 P.M. during the workweek, explained that in 1979 through 1980 she began to notice respondent's long-term absences and that his children were not attending school in the neighborhood. Before that, she would see him regularly at least once a week. When respondent informed her that he was living in Stoneridge on a permanent basis, she notified Kenneth Kushner, the managing agent.

Mr. Kushner, the registered managing agent for 11 years, testified that, as part of his duties, he visits the building once a week. Additionally, he is in daily contact with various tenants with respect to items such as service complaints. He has never received a service complaint from respondent, of whose nonprimary residence he became aware in 1982 as a result of information provided by Ms. Burg.

Testifying on his own behalf, respondent, a real estate developer for over 20 years, admitted that for the past 20 years he has owned a home in Marbletown, New York, which he and his family use on a regular basis. He testified, however, that he has resided at the subject apartment for an average of five days per week for the past 30 years, spending at least 183 days there each year. He conceded that his children go to school in Marbletown, New York; that his children spend the summer in Europe with his wife; and that his four cars are registered in upstate New York. He also

stated he did not know where his wife is registered to vote or which address appears on her driver's license.

The Deputy Commissioner, who had previously denied respondent's protest in accordance with former section 18, found that petitioner had "failed to establish that [respondent] maintains his primary residence at some place other than the subject accommodation, and that [respondent] has submitted evidence sufficient to establish that he maintains his primary residence at the subject accommodation." Significantly, the Deputy Commissioner also found that respondent "filed his 1982 and subsequent years tax returns from the subject accommodation after an attorney advised him that it is a requirement to establish his primary residence at the subject accommodation; that he registered to vote in New York City to comply with the law and Mayor Koch's requirements; that if his prior driver's license indicated his upstate address, he changed his address to the subject accommodation on his current license for the same reason."

Petitioner challenged the determination in this article 78 proceeding. Only DHCR answered. The motion court, finding a rational basis in the record to support the determination, dismissed the petition. We reverse, grant the petition and annul the DHCR determination.

Under the New York City Rent and Rehabilitation Law (Rent Control Law) (Administrative Code of City of New York § 26-401 et seq.), enacted in 1962 as a "temporary measure" for the purpose of preventing the exaction of "unjust, unreasonable and oppressive rents and rental agreements and to forestall profiteering, speculation and other disruptive practices tending to produce threats to the public health" (Administrative Code § 26-401 [a]), the conventional relationship of landlord and tenant, at least as to the length of term and amount of rent based on offer and acceptance, is suspended in favor of a statutory scheme which becomes the measure of the tenant's rights in this regard. (See, Stern v Equitable Trust Co., 238 NY 267, 270.) Thus, the tenant of record has the right to remain in possession for as long as he continues to pay the rent fixed as reasonable under the law.

A more vigorous form of regulation than rent stabilization, "[r]ent control subjects an ever-decreasing number of rental units to stringent controls." (Sullivan v Brevard Assocs., 66 NY2d 489, 494.) A critical requirement of rent control, first established by the Legislature in 1971 when it amended the

Local Emergency Housing Rent Control Act (L 1971, ch 373, eff May 1, 1972) to provide that a housing accommodation not occupied as a primary residence would be subject to decontrol, is that the tenant maintain the apartment as a primary residence.

The memorandum of the State Executive Department in support of the vacancy decontrol bill explains:

"At a time when the people of the State, particularly in the City of New York, are confronted with a critical shortage of housing, it is inequitable and anomalous that some persons receive the economic benefits of retaining the rent controlled status of their housing accommodations although their primary residence is elsewhere. * * *

"This measure, by removing the benefits of rent control with respect to these underutilized housing accommodations, would open up many of these apartments to occupancy of actual residents of the community who are in need of apartments." (1971 McKinney's Session Laws of NY, at 2402.)

Thus, the 1971 legislation was intended to decontrol underutilized housing units and make them available for use as primary residences.

Former section 18 (b) of the New York City Rent and Eviction Regulations, under which this case must be decided,* provided that a housing accommodation shall be decontrolled where the Commissioner determines that the tenant maintains his primary residence at a place other than the housing accommodation in question. The regulation set forth a threshold test which the tenant had first to satisfy: "[T]he Administrator shall not find that the housing accommodation which is subject to these Regulations is the primary residence of the tenant unless the tenant is either domiciled in the City at the claimed housing accommodation or, if not domiciled in the City, the tenant spent an aggregate of more than one hundred

---

* By virtue of the Omnibus Housing Act of 1983 (L 1983, ch 403, § 42) the Administrative Code of the City of New York was amended to provide an exemption for: "Housing accommodations not occupied by the tenant, not including subtenants or occupants, as his or her primary residence, as determined by a court of competent jurisdiction." (Administrative Code § 26-403 [e] [2] [i] [10].) Similar provisions were made for units subject to the Rent Stabilization Law of 1969, as amended. (L 1983, ch 403, § 55.) Since, however, the instant application was filed in 1982, prior to the enactment of the Omnibus Housing Act of 1983, petitioner's primary residency challenge must be decided administratively, rather than by a court of competent jurisdiction.

eighty-three days in the preceding calendar year in the City at such accommodation * * * and, in either event, provides proof satisfactory to the Administrator that the tenant either filed a New York City Resident Income Tax return at the claimed primary residence for the most recent preceding taxable year for which such return should have been filed or that the tenant was not legally obligated to file such tax return".

Thus, in order to demonstrate primary residence at a regulated unit, the tenant had to demonstrate that he filed a New York City resident income tax return at the apartment for the year preceding the decontrol application, and that he was domiciled at the apartment or spent more than 183 days there in the preceding year. The mandatory language of the regulation requires that if both preconditions were not met, the administrator "shall not find that the housing accommodation which is subject to these Regulations is the primary residence of the tenant".

If the threshold test was satisfied, former section 18 (b) required the administrator to "give due consideration to any facts and circumstances establishing that the housing accommodation is not the tenant's primary residence, including, but not limited to, the fact that such tenant (1) specifies an address other than such housing accommodation as his place of residence in any tax return, motor vehicle registration, driver's license or other document filed with a public agency, (2) gives an address other than such housing accommodation as his voting address, or (3) assigns and/or sublets such housing accommodation."

There was an identical test for rent-stabilized units contained in section 54 (E) of the former Code of the Rent Stabilization Association of New York City, Inc. The Rent Control and Stabilization Laws were amended in 1983 to grant jurisdiction to a court of competent jurisdiction to determine the issue of primary residence. (L 1983, ch 403, §§ 41, 42, 55.) Nevertheless, these tests continue to be utilized by the courts in determining whether a tenant who occupies a unit subject to some form of rent regulation occupies the same as his primary residence. As this court explained in *Pendias v 3 E. 69th St. Assocs.* (119 AD2d 467), "[P]roof of primary residence requires the evaluation of a number of factors such as: (a) did the tenant file a New York City resident income tax return?; (b) did the tenant list the subject apartment as his place of residence in any tax return, motor vehicle registration, driver's license or other document filed with a public agency?;

and, (c) did the tenant give an address other than the subject apartment as his voting address?" *(Supra,* at 468-469.)

The tax aspect of the test was also emphasized in *Metzendorf v 130 W. 57 Co.* (132 AD2d 262), where this court noted that a tenant is *"required* to show that he filed a New York City resident income tax return at the claimed primary residence for the most recent preceding taxable year such return should have been filed unless the tenant was not legally obligated to file such a tax return". *(Supra,* at 268; emphasis in original.)

Here, the Deputy Commissioner recognized that the tax return was dispositive in denying respondent's protest, but later, in his postremitittur determination, inexplicably ignored the 1981 tax return, as did the reviewing court. In denying the protest, the Deputy Commissioner noted that "[the 1981] return listed the tenant's address as Stoneridge, New York [and] indicated that his residence was in Ulster County". Thus, he concluded, "it is clear that the subject accommodation may not be found to be the primary residence of the tenant and that the order of the District Rent Administrator decontrolling the subject accommodation must be affirmed." The protest order also properly rejected as controlling respondent's 1982 and 1983 tax returns listing his residence at the subject apartment, since these postapplication years have no probative value as a matter of law. It is also worth noting that at the protest respondent never produced the 1980 return, as he had been requested by the Deputy Commissioner. We do not believe it unfair to infer that respondent failed to produce that return because it similarly showed the Ulster County address.

On remittitur, the Deputy Commissioner not only ignored his previous order on protest and failed even to consider the dispositive 1981 return, he made no mention of the missing 1980 return. Instead, he noted the various documents purportedly establishing respondent's primary residence, including "Federal and State Income Tax returns for the years 1982 to 1985, all of which indicate the subject accommodation as the tenant's address." The Deputy Commissioner focused on these returns notwithstanding his recognition that respondent "filed his 1982 and subsequent years tax returns from the subject accommodation after an attorney advised him that it is a requirement to establish his primary residence at the subject accommodation."

It was error to credit respondent's postfiling change of residence on the tax returns and to ignore the return filed in the year preceding the nonprimary residence challenge. Where, as here, the statutory or regulatory language is clear and unambiguous, the reviewing tribunal should construe the statute to give effect to its plain meaning. *(See, Eaton v New York City Conciliation & Appeals Bd.,* 56 NY2d 340; *Matter of Manhattan Pizza Hut v New York State Human Rights Appeal Bd.,* 51 NY2d 506.)

In *Pendias v 3 E. 69th St. Assocs.* (119 AD2d 467, *supra),* this court specifically rejected the contention of an individual claiming to be a primary resident who, like respondent here, failed to file city tax returns but later did so to establish his primary residence at the subject accommodation. Similarly, in *Metzendorf v 130 W. 57 Co.* (132 AD2d 262, *supra),* this court rejected the tenant's claim that he filed his tax returns from a different address as a matter of convenience, stating, "the tenant's 'convenience' does not qualify as a legal excuse for his failure to file tax returns from his actual residence." *(Supra,* at 268.) Respondent has not even attempted to claim ignorance or convenience as an excuse for his failure to file a 1981 city return from the subject accommodation. Rather, he has conceded that he changed his address after the commencement of the proceeding on the advice of counsel in an attempt to avoid the consequences of the information contained in his 1981 State return, in which he listed his residence as being in Ulster County.

Nor did the February 11, 1986 remitittur of this matter to DHCR "for further consideration" change the relevant period of inquiry with respect to nonprimary residency from pre-1982 to post-1981 since the same November 9, 1982 application for decontrol was at issue. In this regard, *1330 Third Ave. Corp. v Parravicini* (NYLJ, Oct. 27, 1986, at 13, cols 5-6 [App Term, 1st Dept]) is instructive. There, the landlord filed an application in September 1982 with the Office of Rent Control to decontrol an apartment on the grounds of nonprimary residence. A decontrol order was granted on June 22, 1983. The tenant protested. On March 28, 1985, DHCR vacated and set aside the decontrol order on the ground that the Omnibus Housing Act of 1983 transferred jurisdiction over primary residence proceedings to the courts. The landlord thereafter commenced a holdover proceeding, during the trial of which the court limited its proof of the tenant's nonprimary residence to 1984, the one-year period prior to the commencement

of the holdover proceeding. Appellate Term reversed and, in language equally applicable here, held, "Inasmuch as landlord initiated administrative proceedings to recover possession of the subject apartment in September, 1982 upon the ground of tenant's non-primary residence, and this holdover proceeding is merely a continuation of those administrative proceedings, the relevant period of inquiry regarding tenant's alleged non-primary residence is the period prior to the inception of the administrative proceedings" *(supra,* at 13, col 5). As the court explained, sound public policy underlies this reasoning. "This proceeding is but a continuation of the 1982 Rent Office proceeding which was abated by virtue of the Commissioner's ruling in 1985. There was no legislative intent that the transfer of jurisdiction over non-primary residence cases to the courts provide a tenant with a grace period in which to re-establish primary residence" *(supra,* at 13, cols 5-6; *see also, Lufkin v Drago,* 126 Misc 2d 177, *affd* 129 Misc 2d 1108 [App Term, 1st Dept]).

Here, the documents upon which the Deputy Commissioner relied to test primary residence all postdate the year preceding the application for decontrol and evidence a belated attempt to cure. For instance, DHCR relied upon a driver's license issued October 22, 1985, as well as a photocopy of the tenant's temporary driver's license, issued September 13, 1984, both indicating the subject accommodation as the tenant's address. Respondent, however, conceded that his driver's license for the year 1981 listed the Ulster County address.

Instead of submitting proof of voter registration for 1981, respondent produced a September 1984 registration. He could not, however, explain his voter registration in a consistent manner. On one hand, the DHCR order notes that he registered to vote in New York City to comply with the law and Mayor Koch's requirements. On the other hand, respondent stated that he voted in upstate New York in 1982 and 1983 in order "to have a say" in the election of members of the school board in the district where his children attended school.

The evidence submitted demonstrates that respondent did not, as a matter of law, occupy the apartment as a primary residence for the period immediately prior to the decontrol application. The Deputy Commissioner ignored documents for the year preceding the filing of the application, including respondent's 1981 tax return, and considered only the postapplication documents, which, under the applicable regulatory standard, were not dispositive. By its ruling, DHCR has con-

doned respondent's attempt to cure his nonprimary residency with documents all postdating the application for decontrol. A tenant may not, however, cure a nonprimary residency. Since DHCR's determination lacks a rational basis, the petition should have been granted.

Accordingly, the order of the Supreme Court, New York County (Stanley Parness, J.), entered January 23, 1989, dismissing petitioner's article 78 petition, should be reversed, on the law, without costs or disbursements, the petition granted, the determination annulled and the matter remanded to DHCR to issue the appropriate order of decontrol.

MURPHY, P. J., KASSAL, ELLERIN and SMITH, JJ., concur.

Order, Supreme Court, New York County, entered on January 23, 1989, unanimously reversed, on the law, without costs and without disbursements, the petition granted, the determination annulled and the matter remanded to DHCR to issue the appropriate order of decontrol.