■ BERKELEY ASSOCIATES COMPANY, Appellant, v ANGELINA CAMLAKIDES et al., Respondents.—Order of the Appellate Term, Supreme Court, First Department (Miller and McCooe, JJ.; Parness, J. P., dissenting), entered February 9, 1990, which affirmed an order of the Civil Court, New York County (Alice Schlesinger, J.), entered on December 6, 1988, granting a motion by respondents Angelina and Helena Camlakides to dismiss petitioner The Berkeley Associates Company's holdover petition, is affirmed, without costs or disbursements.

By Notice of Nonrenewal dated December 21, 1987, timely served on tenants during the "window period" of 120-150 days before expiration of their lease, the landlord-petitioner Berkeley Associates notified the tenants Angelina and Helena Camlakides of its intent not to renew their Rent Stabilized lease. The sole statement of ground for non-renewal was "the fact that you do not occupy the Premises as your primary resi-

dence." The Notice reflected a "cc" to Angelina Camlakides in Ridge, New York, and to Helena Camlakides in Forest Hills, New York.

An untimely Notice dated May 26, 1988, specified that the facts establishing the existence of grounds for non-renewal included, but were not limited to, the fact that the tenants had a vehicle registered in Ridge, New York, the fact that the building staff and management had not seen the tenants using or occupying their apartment for an extended amount of time, the fact that the tenants own property in Florida, the fact that one of the tenants (it does not say which) maintains a driver's license at the Ridge address, and the fact that one of the tenants (it does not say which) lists Palm Beach as the legal address on her New York State Driver's License.

The Civil Court granted the tenants' motion to dismiss the petition finding the timely Notice was defective under section 2524.2 (b) of the Rent Stabilization Code (9 NYCRR), which mandates the service upon the tenant of a non-renewal notice with "the facts necessary to establish the existence of such ground". The Appellate Term affirmed the Civil Court with one Justice dissenting.

Rent Stabilization Code § 2524.2 (b) requires that a notice to a tenant to vacate or surrender possession of a housing accommodation shall state the ground, as well as "the facts necessary to establish the existence of such ground". The Rent Stabilization Code is promulgated pursuant to the Rent Stabilization Law, part of the New York City Administrative Code, which should be interpreted according to its plain meaning. *(Matter of Ronald Assocs. No. 2 v Michael,* 93 AD2d 723, 724, *affd* 61 NY2d 689.)

The statement in the first timely Notice that "you do not occupy the Premises as your primary residence" simply stated the ground for the non-renewal. It was not a statement of facts supporting that ground.

In *Kaycee W. 113th St. Corp. v Diakoff* (160 AD2d 573, 574) applying section 2204.3 (b) of the New York City Rent and Eviction Regulations (9 NYCRR), we held that a notice of non-primary residence was insufficient to serve as a predicate for an eviction proceeding because it "merely recited the legal ground for the eviction, but failed to set forth any of the facts upon which the ensuing non-primary-residence proceeding would be based" (citing *First Sterling Corp. v Zurkowski,* 142 Misc 2d 978).

The policy arguments raised by the dissent herein which

were also raised in the dissent at the Appellate Term were adequately answered in Justice McCooe's concurring memorandum at the Appellate Term. In any event, regardless of what we perceive to be the wisdom of the underlying policy, we are constrained by the plain language of the Rent Stabilization Code to enforce it as written (McKinney's Cons Laws of NY, Book 1, Statutes § 76; *Zaldin v Concord Hotel,* 48 NY2d 107, 113). Concur—Milonas, Rosenberger, Asch and Smith, JJ.

Sullivan, J. P., dissents in a memorandum as follows: This is an appeal from the dismissal of a holdover proceeding—predicated upon the claim that the tenant was not entitled to a rent stabilized renewal lease because the subject apartment was not occupied as a primary residence—on the ground that the requisite 120/150 day notice did not allege sufficient facts to satisfy the Rent Stabilization Code's requirements. The matter is before us by leave of the Appellate Term, which, by a divided court (Parness, J. P., dissenting), affirmed the order of dismissal. I would reverse and reinstate the petition.

The apartment in issue, 15-F at 400 East 54th Street in Manhattan, which the tenant leases pursuant to a written lease expiring on April 30, 1988, is subject to the New York City Rent Stabilization Code. On December 21, 1987, between 120 and 150 days prior to the lease's expiration, the landlord, pursuant to section 2524.2 of the Rent Stabilization Code (RSC; 9 NYCRR), served a notice, addressed to the tenant at the apartment, with a copy addressed to the tenant at 29A Trent Court, Ridge, New York 11961, informing her that it did not intend renewing the lease "upon the grounds and by reason of the fact that you do not occupy the [p]remises as your primary residence." A notice of termination of tenancy was thereafter, on May 31, 1988, served on the tenant, pursuant to RSC § 2524.4 (c), advising her that the tenancy would be terminated on June 30, 1988 and that legal proceedings would be commenced to recover possession of the apartment on the basis of nonprimary residence. The notice of termination stated that the tenant had a vehicle registration and driver's license showing 29A Trent Court, Ridge, New York as her address, the latter listing her legal address as Conventry H-182, Century Village, West Palm Beach, Florida, which premises the landlord believed the tenant owned, and that she had not been seen using and occupying the apartment by the building staff and management for an extended time.

When the tenant refused to vacate the apartment, the landlord, on or about August 5, 1988, commenced a holdover proceeding in the Civil Court. After joinder of issue, the

tenant moved to dismiss the petition on the ground that the notice of intent (the December 21, 1987 notice) was defective under RSC § 2524.2 (b) in that it failed to state the specific facts upon which the landlord intended to rely in support of its claim of nonprimary residence. The Civil Court granted the motion and dismissed the petition on the ground that the notice "merely gives the ground for the nonrenewal (nonprimary residence) and nothing more." The Appellate Term affirmed, as noted, holding that RSC § 2524.2 (b) required that the notice of nonprimary residency to a rent stabilized tenant recite the facts necessary to establish such claim. In so holding, both the Civil Court and Appellate Term construed the Rent Stabilization Code requirement that the notice state "facts" unreasonably and unduly literally and restrictively, without regard to the requirement's history and purpose of whether its purpose was satisfied and without considering the harsh and unjust consequences to the landlord.

RSC § 2524.2 (b)'s requirement* that the notice state "the facts necessary to establish the existence of such ground" appeared, in identical language, as early as in the post-World War II rent-control regulations in section 53 of the State Rent and Eviction Regulations, adopted in 1951 (now 9 NYCRR 2104.3). Various rent regulatory provisions have carried the same language forward since then. (See, New York City Rent, Eviction and Rehabilitation Regulations § 53 [b], eff May 1, 1962 [now 9 NYCRR 2204.3 (b)]; Emergency Tenant Protection Regulations [9 NYCRR] § 2504.3 [b] [formerly State Rent and Eviction Regulations § 53 (2), eff May 29, 1974.) Significantly,

---

* Rent Stabilization Code (9 NYCRR) § 2524.2, insofar as is relevant, provides:

"Termination notices. (a) Except where the ground for removal or eviction of a tenant is nonpayment of rent, no tenant shall be removed or evicted from a housing accommodation by court process, and no action or proceeding shall be commenced for such purpose upon any of the grounds permitted in section * * * 2524.4 [grounds for refusal to renew lease] of [this] Part, unless and until the owner shall have given written notice to such tenant as hereinafter provided.

"(b) Every notice to a tenant to vacate or surrender possession of a housing accommodation shall state the ground under section * * * 2524.4 [grounds for refusal to renew lease] of this Part, upon which the owner relies for removal or eviction of the tenant, the facts necessary to establish the existence of such ground, and the date when the tenant is required to surrender possession.

"(c) Every such notice shall be served upon the tenant * * *

"(2) in the case of a notice * * * pursuant to subdivision (c) of section 2524.4 of this Part [primary residence], at least 120 and not more than 150 days prior to the expiration of the lease term".

the section 53 notice requirement, when enacted and therefore adopted, *verbatim,* in a succession of rent regulatory provisions, had nothing to do with nonprimary residence; under the original rent control regulations it applied only to evictions pursuant to section 52 of the New York City Rent, Eviction and Rehabilitation Regulations, entitled "PROCEEDINGS FOR EVICTION WITHOUT CERTIFICATE", the fault grounds for eviction. Section 53's obvious purpose was to ensure that a tenant facing an eviction claim be given "the opportunity to meet the landlord's claim." *(Rappaport v Connell,* 53 Misc 2d 1016 [App Term, 1st Dept].) An allegation that the tenant "is violating a substantial obligation of his tenancy" (§ 52 [a]) or "committing or permitting a nuisance" (§ 52 [b]), without more, would leave a tenant guessing as to the nature of his alleged objectionable conduct.

In fact, before 1983, although nonprimary residence was a ground for decontrol under rent control and nonrenewal under rent stabilization, nonprimary residence disputes were resolved exclusively by the particular agency charged with the administration of the regulatory scheme. *(See,* State Rent and Eviction Regulations former § 18; New York City Rent, Eviction and Rehabilitation Regulations former § 18; Code of Rent Stabilization Association of New York City, Inc. § 54 [E] [former Rent Stabilization Code].) As part of the Omnibus Housing Act of 1983 (L 1983, ch 403, §§ 41-42), however, jurisdiction over nonprimary residence disputes under both rent control and rent stabilization, both of which continue to exempt nonprimary residences from their respective coverages, was vested exclusively in the courts. (Administrative Code of City of New York § 26-403 [e] [2] [i] [10] [Rent Control Law]; § 26-504 [a] [1] [f] [Rent Stabilization Law].) Despite this significant change, RSC § 2524.2 (b), the regulation at issue, was not enacted until May 1, 1987, the effective date of the current Rent Stabilization Code. Nor, for that matter, was the specific requirement of a 120/150 day notice of a nonprimary residence nonrenewal explicitly contained in the pre-1987 Rent Stabilization Code or Rent Stabilization Law, as amended in 1983. Such requirement was the result of Court of Appeals decisions subsequent to the 1983 vesting of nonprimary residence disputes in the courts.

In *Golub v Frank* (65 NY2d 900, 901), the court held that under the former Rent Stabilization Code, "where an owner seeks to invoke [nonprimary residence] to deny a tenant his right to a renewal lease, the owner must * * * give notice to the tenant of his intention not to offer a renewal lease not

more than 150 and not less than 120 days prior to the end of the tenant's lease term." *Golub* was followed by *Crow v 83rd St. Assocs.* (68 NY2d 796, 797), in which the court held that Omnibus Housing Act of 1983 § 41's requirement of a 30 day notice prior to the commencement of an action or proceeding based on nonprimary residence did not alter the requirement of section 60 of the [former Rent Stabilization Code] that a landlord notify the tenant of the renewal or nonrenewal of a lease not more than 150 days and not less than 120 days prior to the expiration date. In its analysis, the court was careful to note the different and distinct functions of the two notice provisions: the purpose of the 120/150 day notice is to communicate the landlord's intention to renew or not to renew; a 30 day notice communicates intent to commence action to recover possession on the ground of nonprimary residence. Even though the *Crow* and *Golub* holdings, codified in section 2524.2, make it clear that the 120/150 day notice of nonrenewal was a notice of intent, the 1987 Code grouped this notice requirement within a class of other notices in a section entitled "Termination notices" and, utilizing the identical language contained in the original rent control regulations adopted in 1951, required that all termination and nonrenewal notices state "the facts necessary to establish the existence of such ground". (RSC § 2524.2 [b].) We have no insight into the reason and justification for such a requirement in the context of a nonprimary residence claim but note the absurdly unfair consequences that might follow from a literal application of the regulation.

As both *Golub (supra)* and *Crow (supra)* hold, the purpose of the 120/150 day notice is to provide notice of the landlord's intent not to renew a lease and the reason therefor. No one has suggested that both of these purposes were not fully served by the notice at issue. In alleging that the apartment was not occupied as the tenant's primary residence, it left no doubt as to the claim the landlord intended to make. Indeed, the notice contained a "cc" notation indicating that a copy was being sent to the tenant at another address, 29A Trent Court, Ridge, New York 11961.

An allegation of nonprimary residence in contrast to a claim of a substantial lease violation, as Justice Parness in his dissent noted, "is itself the fact upon which termination is predicated." Any further factual elaboration would not serve to amplify the claim; it would merely itemize the evidence in support thereof. As the Appellate Term dissenter also recognized, the holding here has created the absurdity of requiring

the notice of intent, which is required to be served four to five months before any proceeding can be commenced, to allege more facts than the petition itself. Even in a petition in a summary proceeding a landlord need not plead his evidence. *(See, Reich v Cochran,* 201 NY 450, 455.) To require an elaboration of the facts supporting the landlord's statement of ultimate fact, i.e., "you do not occupy the [apartment] as your primary residence", is to return to the discarded and discredited code pleading requirements *(see,* 3 Weinstein-Korn-Miller, NY Civ Prac ¶ 3013.01) and to ensnare the courts in endless litigation over the adequacy of the notice. The notice here was sufficient to inform the tenant as to the factual basis for nonrenewal. And, since nonprimary residency is not subject to cure *(Matter of Stahl Assocs. Co. v State Div. of Hous. & Community Renewal,* 148 AD2d 258, 268), the tenant cannot argue that she would have been in any better position had the notice furnished the particulars of the owner's claim.

Indeed, the "mischievous element in this already complex and difficult area of litigation" predicated by Justice Parness in his dissent already is upon us in full flower. An allegation that " '[y]ou have vacated the apartment and have allowed Ana Osmanli possession thereof' " *(Future Assets v Evans,* NYLJ, May 30, 1990, at 23, col 2 [Civ Ct, NY County]) and a notice that "simply allege[d] that the subject premises are not respondent's primary residence because he has not resided there for 183 days in the last year, does not maintain the premises as his domicile, and has not been seen residing there for over six months" *(Melohn v Doyle,* NYLJ, July 18, 1990, at 20, col 5 [Civ Ct, NY County]) were found to be factually insufficient. Given such inexplicable interpretations, is it any wonder that the focus of every nonprimary residence proceeding is not on the merits but on the sufficiency of the 120/150 day notice. In the context of rent stabilization, a successful challenge to the sufficiency of the notice insures the tenant another renewal lease for at least two years. Thus, since the notice of intent not to renew must be served within the 120/150 day window period (pre-lease expiration), a valuable substantive right—the right to a renewal lease—is being conferred upon the tenant by virtue of, at best, a procedural defect. When a holdover proceeding is dismissed because of a defective 120/150 day notice the owner cannot retroactively comply with the condition precedent to nonrenewal. Such a result is unjust and disproportionately harsh and serves no useful societal purpose. In the long run, it defeats the very purpose of rent regulation. "A construction which would make

a statute absurd, or lead to absurd results, should be avoided". (McKinney's Cons Laws of NY, Book 1, Statutes § 145; *Williams v Williams,* 23 NY2d 592, 599.) In this case, RSC § 2524.2 (b) should be interpreted so that the statement, "upon the grounds and by reason of the fact that you do not occupy the [p]remises as your primary residence" adequately sets forth the ground as well as the "facts necessary to establish the existence of such ground".

Significantly, it should be noted, the Appellate Terms in both the First and Second Departments, in the context of a different ground for nonrenewal under the Rent Stabilization Code, have held that a 120/150 day nonrenewal notice stating that the owner seeks to recover possession for his own personal use and occupancy satisfies the factual specificity requirements of RSC § 2524.2. *(Dominguez v Corniell,* 148 Misc 2d 297; *Whang v Wald,* NYLJ, Apr. 3, 1990, at 29, col 5.) I can discern no rationale for treating the two types of claims differently. They are subject to the same notice requirements.

In upholding the Appellate Term's overly literal interpretation of the Code provision at issue, the majority relies upon *Kaycee W. 113th St. Corp. v Diakoff* (160 AD2d 573), in which this court held that a 30 day notice served as the predicate for an ultimately dismissed Civil Court summary proceeding could not serve as the predicate for a subsequently commenced action for a declaratory judgment and that "service of a new 30-day notice was required." The court also found, citing *First Sterling Corp. v Zurkowski* (142 Misc 2d 978), that the notice was deficient because it failed to state the facts underlying the allegation of nonprimary residency. Accordingly, the action was dismissed but "without prejudice to the landlord's commencement of a new proceeding, if so advised, after the service of a new and proper 30-day notice." *(Supra,* at 574.) *Kaycee,* however, does not mandate the result reached by the majority. Since the *Kaycee* determination was based on another ground, that part of the decision relating to the adequacy of the notice was dicta. Moreover, *Kaycee* involved a rent-controlled, not rent-stabilized, apartment. Indeed, the holding in *Kaycee* brings into sharp focus the gross inequity of the Appellate Term's decision since the dismissal in *Kaycee* was without prejudice to the service of a new notice and commencement of a new proceeding. Thus, in effect, landlords who, under the Appellate Term's holding, serve a defectively stated notice on a rent-stabilized tenant are treated much more harshly than those who serve the same "defective" notice on a rent-controlled tenant, since they must await the

arrival of the new window period, i.e., 120/150 days before the expiration of the renewal lease. Such a result makes no sense and cannot be justified, especially since rent stabilization was always intended to be a less onerous form of regulation than rent control. *(Matter of Ansonia Residents Assn. v New York State Div. of Hous. & Community Renewal,* 75 NY2d 206, 216; *Braschi v Stahl Assocs. Co.,* 74 NY2d 201, 210.)

Since the Appellate Term decision is based on an unduly literal construction of the Code provision at issue that ignores the regulation's history and purpose, which was completely satisfied by the notice served herein, and creates an absurd and inequitable result whereby a mere pleading defect rewards a rent-stabilized tenant with the right to a renewal lease, irrespective of the merits of the landlord's nonprimary residence claim, it cannot stand.