OPINION OF THE COURT
Kenneth L. Gartner, J.
This commercial summary holdover proceeding raises a novel issue: Whether, in assessing the sufficiency of a notice of default served as a necessary predicate for termination of a commercial lease, the court is bound to look no farther than the four corners of the writing, or can consider proof extrinsic to the notice itself.
The respondent tenant operates a restaurant located in a Levittown strip mall. A store next door to the restaurant is vacant. The landlord has a prospective tenant for the vacant space. However, the prospective tenant requires more space than is available.
Section 1.04 (B) of the parties’ lease provides in relevant part: “Landlord, at its option, reserves the right at any * * * time during the term of this Lease to reconfigure the Premises by either increasing or decreasing the size thereof * * * Tenant agrees to cooperate with Landlord in all matters relating to reconfiguration of Premises, including, but not limited to, giving Landlord access to the Premises at all times for the performance of Landlord’s reconfigured Space Work.”
The landlord proposed, in the exercise of this right reserved to it under the lease, to take away some of the space of the restaurant so as to accommodate the prospective tenant. In order to minimize the effect upon the respondent, the landlord proposed to provide the respondent with additional new space extending into a vacant area on the other side of the restaurant. Pursuant to the lease, the landlord would perform all work necessary at its own expense, and since there would be, even after provision of the additional new space, a reduction in the tenant’s total space (by 7.7%), the tenant would receive a concomitant reduction in rent.
In early through mid-November of 1999, the parties exchanged correspondence regarding the proposed reconfiguration. They negotiated in person, as well, over the landlord’s proposed changes and over the reduction in rent to be afforded to the tenant. Finally, in a November 12, 1999 letter, the respondent’s counsel rejected the landlord’s proposal asserting that nothing would be acceptable which reduced the seating *676 size of the restaurant or changed the location of the bar or front entrance. The respondent’s counsel advised the landlord that “any unauthorized entry defined as entering without the permission of Tenant as defined in the lease will be deemed as a trespass.”
Four days later — on November 16, 1999 — the landlord served upon the tenant a notice of default setting forth the relevant terms of lease section 1.04 (B) and asserting that “you are in default of the above provisions of your Lease in that you have failed to cooperate with Landlord and provide Landlord access to the premises to begin commencement of the reconfiguration of your premises.” After the contractual cure period had expired, the landlord served a December 2, 1999 notice of cancellation, terminating the lease effective December 5, 1999. This proceeding was thereafter commenced.
The respondent raises two defenses. First, the respondent contends that the notice of default was insufficiently particular in describing the default of the respondent. Second, the respondent asserts that section 1.04 (B) of the lease permits the landlord to increase or decrease the tenant’s space, but not to otherwise require any alteration in the restaurant layout.
With respect to the notice, Chinatown Apts. v Chu Cho Lam (51 NY2d 786 [1980]) established the base-line standard. The notice must be sufficiently specific to demonstrate what remedial action is being required and what lease provision requires it. In the instant proceeding, the notice meets this standard.
In Berkeley Assocs. Co. v Camlakides (173 AD2d 193, 199 [1st Dept], affd on mem below 78 NY2d 1098 [1991]), Justice Sullivan, in dissent in the Appellate Division, argued that notices should be sustained without requiring a pedantic level of detail. As stated by Justice Sullivan (at 199): “To require an elaboration of the facts supporting the landlord’s statement of ultimate fact * * * is to return to the discarded and discredited code pleading requirements * * * and to ensnare the courts in endless litigation over the adequacy of the notice.” Justice Sullivan’s position in that case was rejected solely because the Appellate Division majority viewed itself as “constrained by the plain language of the Rent Stabilization Code” (173 AD2d, at 195), the statute which controlled in that case but which is not at all at issue in the present commercial proceeding. In the absence of such a constraint, this court, applying Justice Sullivan’s analysis, finds the plain language of the predicate notice wholly sufficient, particularly in a commercial context. (See, NL Indus. v PaineWebber Inc., 720 F *677 Supp 293, 299-301 [SD NY 1989]; PacifiCorp Capital v Tano, Inc., 877 F Supp 180, 185 [SD NY 1995]; SVS, Inc. v Rabbit Ears Prods., 1992 WL 91183, *9, 1991 US Dist LEXIS 18199, *22 [SD NY, Dec. 12, 1991, Haight, J.].)
Even if the notice on its face were not fully sufficient, however, the fact is that the correspondence and communication between the parties prior to the notice allowed the respondent fully to appreciate the nature of the breach with which it was charged.
This court has been unable to find any authority directly addressing the issue of whether evidence extrinsic to a notice may be considered in assessing the notice’s sufficiency. An analogous situation is presented, however, by that line of decisions limiting who may give notice on behalf of a landlord. Just as the purpose of a notice to cure is to specifically apprise the tenant of claimed defaults in its obligations under the lease and of the danger of forfeiture and termination of the lease if the claimed default is not cured within a set period of time (Filmtrucks, Inc. v Express Indus. & Term. Corp., 127 AD2d 509, 510 [1st Dept 1987]), a tenant receiving any notice is entitled to know with safety that the person serving the notice is one with the authority to act on behalf of the landlord. (Siegel v Kentucky Fried Chicken, 108 AD2d 218 [2d Dept 1985], affd 67 NY2d 792 [1986].) A landlord, when the sufficiency of his predicate notice is attacked as not having been served by someone in whose authority the tenant could safely rely, is permitted to demonstrate not merely that the agent was authorized in a writing which accompanied the notice, or was named in the lease, but that previous dealings between the.tenant and the agent established the tenant’s knowledge of and acquiescence in the agency. (Siegel v Kentucky Fried Chicken, supra, 67 NY2d, at 794; 54-55 St. Co. v Torres, 171 Misc 2d 237, 238 [App Term, 1st Dept 1997]; Zirinsky v Violet Mills, 152 Misc 2d 538, 540 [Civ Ct, Queens County 1991]; 80-02 Leasehold Co. v 1st Nationwide Bank, NYLJ, Mar. 30, 1994, at 25, col 4 [Civ Ct, Queens County].) Just as the sufficiency of the tenant’s knowledge of the agent’s authority is of necessity demonstrated via the introduction of facts extrinsic to the notice itself (see, Matter of Owego Props. v Campfield, 182 AD2d 1058, 1059 [3d Dept 1992]), so the tenant’s knowledge and appreciation of the specific details of the default claimed in a notice of default should be susceptible to proof extrinsic to the notice itself. In the instant case, that proof is massive and largely uncontroverted. The notice is, for this additional reason, sufficient.
*678 With respect to the respondent’s contractual argument, the respondent in effect asserts that if the landlord had merely taken away the space for the other tenants (thus decreasing the size of the respondent’s premises), this would be permissible; however, by offering to add to the respondent’s premises and thus mitigate the effect of the reconfiguration, the landlord has somehow breached the agreement. This interpretation would lead to an absurd result which must be rejected. (833 N. Corp. v Tashlik & Assocs. 256 AD2d 535 [2d Dept 1998]; Reape v New York News, 122 AD2d 29, 30 [2d Dept 1986].)
This does not mean that the landlord can make any reconfiguration it wishes, willy-nilly and totally unconstrained. Implicit in all contracts is a covenant of good faith and fair dealing in the course of the contract’s performance. This implied obligation encompasses any promise which a reasonable person in the position of the promisee would be justified in understanding was included. (Just-Irv Sales v Air-Tite Bus. Ctr., 237 AD2d 793, 794 [3d Dept 1997]; see also, Wood v Duff-Gordon, 222 NY 88 [1917, Cardozo, J.].) In this case the respondent has failed to establish that the landlord’s proposed reconfiguration is other than reasonable and in accord with the landlord’s obligation.
Accordingly, the petitioner is awarded judgment of possession and a warrant of eviction.