[830 NYS2d 101]

Davɪᴅ S. Pᴜʟᴛz et al., Respondents, v Cᴀᴛʜᴇʀɪɴᴇ Eᴄᴏɴᴏᴍᴀᴋɪs et al., Appellants.

First Department, February 15, 2007

## APPEARANCES OF COUNSEL

*Rosenberg & Estis, P.C.*, New York City (*Jeffrey Turkel* of counsel), and *Rose & Rose*, New York City (*Todd A. Rose* of counsel), for appellants.

*Collins, Dobkin & Miller, LLP*, New York City (*Stephen Dobkin* of counsel), for respondents.

*Belkin Burden Wenig & Goldman, LLP*, New York City (*Magda L. Cruz* and *Sherwin Belkin* of counsel), for the Rent Stabilization Association of New York City, Inc., amicus curiae.

## OPINION OF THE COURT

GONZALEZ, J.

The issue on this appeal is whether an owner who seeks to recover the six remaining rent-stabilized apartments in a 15-unit tenement building for personal use and occupancy must first obtain the permission of the Division of Housing and Community Renewal (DHCR). We find that because the unambiguous provisions of the Rent Stabilization Law and Rent Stabilization Code permit an owner to recover "one or more dwelling units" for personal use, without approval of the DHCR, we reverse Supreme Court's order and dismiss plaintiffs' complaint.

Defendants, a married couple with two children, are the owners of a 15-unit building located at 47 East 3rd Street in Manhattan. Plaintiffs are the rent-stabilized tenants of apartments 1, 2, 4, 7 and 13. In 2003 and 2004, defendants served various tenants with notices stating their intention not to renew the tenants' rent-stabilized leases, and to recover possession of all of the remaining rent-stabilized apartments, on the ground of owner-occupancy pursuant to Rent Stabilization Code (9 NYCRR) § 2524.2 (c) (3) and § 2524.4 (a). The notices included

a statement by defendants that they "intend, in good faith, to recover possession of all of the apartments" for their personal use as a primary residence, and further explained that defendants, who presently occupy the top floor of a Brooklyn brownstone shared by many of their relatives, need additional living space for their family. In addition, the notices detailed defendants' plan for converting the premises into a single-family dwelling.

Beginning in December 2003, defendants commenced holdover proceedings against six building tenants (hereinafter Civil Court tenants) whose leases had expired and who had been previously served with notices of nonrenewal.* In their answers, each of the Civil Court tenants asserted as an affirmative defense that defendants' plan to evict every rent-stabilized tenant in the building violated the intent and purpose of the Rent Stabilization Law and Code. Thereafter, the Civil Court tenants moved for discovery regarding defendants' good faith intention to use each apartment for their personal use. In three of these proceedings, Civil Court (Lydia Lai, J.) issued identical decisions granting only limited discovery to the tenants. In addition, however, Judge Lai's decisions noted that under Rent Stabilization Code § 2524.4 (a) (3), an individual owner was entitled to recover possession of "one or more dwelling units for personal use and occupancy" and that "[t]here is no limit on how much space a particular owner may regain for personal use," citing *Sobel v Mauri* (NYLJ, Dec. 12, 1984, at 10, col 4 [App Term, 1st Dept]). According to Judge Lai's decisions, the "owner is only required to make a 'good faith' showing that he or she intends to occupy the housing accommodation as a primary residence."

After these unfavorable rulings in Civil Court, in October 2004 the five plaintiffs herein, represented by the same law firm as the Civil Court tenants, commenced the instant declaratory judgment action in Supreme Court against defendants. In their complaint, plaintiffs alleged that the removal of the remainder of the building's units from rent stabilization requires authorization from DHCR. Plaintiffs sought a declaration that defendants' plan violated the Rent Stabilization Law and Code; an injunction tolling the notices of nonrenewal and enjoining defendants from instituting any summary proceedings based on such notices; and attorneys' fees based on defendants' breach of the respective leases. By order to show cause, plaintiffs simultaneously moved for a preliminary injunction.

---

* These Civil Court tenants are not plaintiffs in the present action.

In opposition, defendants cross-moved to dismiss on the ground that a Supreme Court action by a tenant seeking declaratory and injunctive relief against a landlord was improper where the claim could have been raised as a defense in a pending summary proceeding commenced by the landlord. Defendants argued that plaintiffs were engaging in forum shopping.

In a June 20, 2005 order, the motion court (Feinman, J.), granted plaintiffs preliminary injunctive relief barring defendants from taking any action to cancel or terminate plaintiffs' leases, with the exception of serving initial notices of nonrenewal on the three plaintiffs whose leases had yet to expire (8 Misc 3d 1022[A], 2005 NY Slip Op 51238[U] [2005]). The court held that any reading of the Rent Stabilization Code that would authorize a landlord to recover all of the remaining units in a tenement building at one time for owner-occupancy purposes would be incompatible with the statute's intent to provide affordable and stable housing to New York City residents (at *9). The court also concluded that defendants' interpretation would leave the tenants without a remedy in situations where the landlord, acting in bad faith, did not actually intend to personally occupy the recovered units (id.). In addition, the court rejected Appellate Term's pronouncement in *Sobel v Mauri* (NYLJ, *supra*) that the Legislature had not as of yet placed any limitation on the number of units that could be regained for owner-occupancy purposes, finding that statement to be mere dictum (at *6 n 8).

In September 2005, defendants moved for summary judgment, arguing that the Rent Stabilization Law and Code unambiguously permit an owner to recover "one or more dwelling units" for personal use, without limitation or DHCR approval, as long as the owner demonstrates a good faith intention to use the units as his or her primary residence. Plaintiffs cross-moved for summary judgment asserting that defendants' attempt to remove an entire building from rent stabilization without DHCR approval violated both the letter and spirit of the Rent Stabilization Law and Code, and that defendants must meet all of the Code requirements for the withdrawal of all units from the housing market.

In the order appealed from, Supreme Court (Faviola A. Soto, J.) granted plaintiffs' motion to the extent of declaring that defendants violated Rent Stabilization Code § 2524.5 by failing to obtain DHCR approval before attempting to regain possession of the entire building, and permanently enjoining defen-

dants from taking any action to cancel or terminate plaintiffs' leases on the ground of owner-occupancy unless such approval was obtained. The court expressly found that defendants' plan to recover the apartments was governed by Rent Stabilization Code § 2524.5, because it involved an owner's attempt to withdraw any or all housing accommodations from the market. Conversely, the court found that section 2524.4 of the Code, which permits recovery of "one or more dwelling units" for personal use without DHCR approval, was inapplicable because defendants were seeking to recover *all* of the building units. The court also found that permitting an owner to recover all of the stabilized apartments in a 15-unit building would conflict with the policy underlying the Rent Stabilization Code, namely, preservation of regulated rental housing. We reverse.

"It is fundamental that a court, in interpreting a statute, should attempt to effectuate the intent of the Legislature. The starting point is always to look to the language itself and [w]here the language of a statute is clear and unambiguous, courts must give effect to its plain meaning" (*State of New York v Patricia II.*, 6 NY3d 160, 162 [2006] [internal quotation marks and citations omitted]).

In this case, the clear and unambiguous provisions of both the Rent Stabilization Law and Code permit an owner to recover an unlimited number of stabilized units for personal use and occupancy without DHCR approval, as long as good faith intent to use the premises as a primary residence is established. Rent Stabilization Law (Administrative Code of City of NY) § 26-511 (c) (9) (b) provides that any rent stabilization code adopted by DHCR must "provide[ ] that an owner shall not refuse to renew a lease except: . . . (b) where he or she seeks to recover possession of *one or more dwelling units* for his or her own personal use and occupancy as his or her primary residence in the city of New York" (emphasis added). Notably, nothing in this subdivision may be read to require DHCR approval before defendants are entitled to recover "one or more" of a building's apartments for personal use.

The Rent Stabilization Code speaks more directly to the question of whether DHCR approval is required in owner-occupancy cases where multiple apartments are sought to be recovered. Indeed, there are two provisions of the Code that pertain to refusals to renew stabilized leases, one requiring DHCR approval (Rent Stabilization Code [RSC] § 2524.5 [a] [1]) and the other not (RSC § 2524.4 [a] [1]). Since defendants did not obtain

permission from DHCR in this case, we look first to the section that does not require DHCR approval.

RSC § 2524.4 (a) (1), applicable to refusals to renew leases "without order of the DHCR," provides that

> "The owner shall not be required to offer a renewal lease to a tenant . . . , and may commence an action or proceeding to recover possession in a court of competent jurisdiction, upon the expiration of the existing lease term . . . only on one or more of the following grounds:
>
> "(a) *Occupancy by owner or member of owner's immediate family.*
>
> "(1) An owner who seeks to recover possession of a housing accommodation for such owner's personal use and occupancy as his or her primary residence in the City of New York and/or for the use and occupancy of a member of his or her immediate family as his or her primary residence in the City of New York."

Although this subdivision refers to the owner's right to recover "a housing accommodation" for personal use and occupancy, RSC § 2524.4 (a) (3) clarifies the scope of that right, by providing that "this subdivision shall only permit one of the individual owners of any building, whether such ownership is by joint tenancy, tenancy in common, or tenancy by the entirety to recover possession of *one or more dwelling units* for personal use and occupancy" (emphasis added).

Reading these provisions of the Rent Stabilization Law and Code together, it is clear that DHCR approval is not required where an owner seeks possession of "one or more" dwelling units for personal use and occupancy. The plain meaning of the words "one or more" can only be interpreted as a minimum of one apartment and maximum of all (*Malta v Brown*, 12 Misc 3d 1164[A], 2006 NY Slip Op 51028[U], at *7 [Civ Ct, NY County 2006, Lebovits, J.]). RSC § 2524.4 (a) (1) is clearly the applicable Code provision in this case, and the motion court erred in concluding otherwise.

By contrast, RSC § 2424.5 (a) is the Code provision that identifies the circumstances in which DHCR approval is required before an owner may refuse to renew a rent stabilized lease. Only one of the situations mentioned in subdivision (a) bears any relevance here. RSC § 2524.5 (a) (1) provides:

"(a) The owner shall not be required to offer a renewal lease to a tenant . . . , and shall file on the prescribed form an application with the DHCR for authorization to commence an action or proceeding to recover possession in a court of competent jurisdiction after the expiration of the existing lease term, upon any one of the following grounds:

"(1) Withdrawal from the rental market. The owner has established to the satisfaction of the DHCR after a hearing, that he or she seeks in good faith to withdraw any or all housing accommodations from both the housing and nonhousing rental market without any intent to rent or sell all or any part of the land or structure *and*:

"(i) that he or she requires all or part of the housing accommodations or the land for his or her own use in connection with a business which he or she owns or operates; *or*

"(ii) that substantial violations which constitute fire hazards or conditions dangerous or detrimental to the life or health of the tenants have been filed against the structure containing the housing accommodations by governmental agencies having jurisdiction over such matters, and that the cost of removing such violations would substantially equal or exceed the assessed valuation of the structure" (emphasis added).

The motion court found this section applicable to defendants' plan because by seeking to recover all of the remaining stabilized apartments in the building, it was effectively withdrawing them from the rental market, thereby triggering the DHCR approval requirement. However, as should be plain from the statutory language, RSC § 2524.5 is not triggered merely by the fact that "any or all" housing accommodations are sought to be recovered. Rather, there must be an attempt to withdraw any or all housing accommodations, *and* that withdrawal must be either for the purpose of conducting the owner's business or because the cost of removing violations filed by government agencies is equal to or exceeds the value of the property. The conjunction "and" cannot be ignored, and once properly considered, it compels the conclusion that if the withdrawal is not for one of the purposes enumerated in subparagraph (i) or (ii), the section does not apply (*Malta*, 2006 NY Slip

Op 51028[U] at *4-6). Given that there is no allegation in plaintiffs' complaint or anywhere else in the record that defendants seek to withdraw the remaining units for a business purpose or because the cost of removing violations is equal to or greater than the property's value, DHCR approval was not required in this case (*id.* at *5).

Contrary to plaintiffs' argument and Judge Feinman's decision on the motion for a preliminary injunction, the case law in this Department has consistently recognized that "the Legislature has as yet placed no limitation on the amount of space a given owner may regain for personal use" (*Sobel v Mauri*, NYLJ, *supra*). Although Judge Feinman found that this statement in *Sobel* was dictum, and Judge Soto felt constrained by the law of the case doctrine, the above statement was an integral part of the holding in *Sobel* and it is a correct statement of the law (*Malta* at *10).

With the exception of the two rulings of Supreme Court in this case, every court that has considered this issue in this Department has concluded, consistent with *Sobel*, that the Legislature has never imposed a limit on the number of units that may be recovered in an owner occupancy proceeding (*see id.* at *11-12, citing, inter alia, *Delavan v Spirounias*, NYLJ, Mar. 14, 2001, at 19, col 5 [Civ Ct, NY County]; *Wong v Repass*, NYLJ, Dec. 2, 1998, at 29, col 2 [Civ Ct, NY County]; *Canino v Fogel*, NYLJ, Sept. 22, 1993, at 23, col 3 [Civ Ct, NY County], *affd* NYLJ, May 19, 1994, at 27, col 4 [App Term, 1st Dept]; *Tauber v Ruscica*, NYLJ, Oct. 14, 1987, at 14, col 3 [Civ Ct, NY County]). Further, four additional decisions in the Civil Court proceedings involving the Civil Court tenants and these defendants have also followed the *Sobel* holding or cited it with approval (*see Malta* at *11).

To the extent Judges Feinman and Soto may have relied on the policy underlying the Rent Stabilization Code to preserve the supply of regulated housing in New York City as a basis for rejecting the *Sobel* holding, this too was error. Although both courts correctly summarized this legislative policy, they overlooked that the same legislative body also enacted a provision expressly permitting an owner to recover dwelling units for personal use and occupancy, and did so without imposing any limitation on the number of units that may be recovered. As defendants correctly note, the Legislature has proven perfectly capable of drafting language such as "one or more, but not all," if that were the intent of the lawmakers (*see* RPTL 420-b [6]

["(r)eal property which is taxable by one or more, but not all, of the municipal corporations within which it is located . . . shall also be exempt from such levies and assessments"]; *see also* Municipal Home Rule Law § 2 [5]). The Legislature's failure to include any limitation in the Rent Stabilization Code is powerful evidence that no such limit was intended.

In essence, plaintiffs' argument is that an express right granted to owners under the Rent Stabilization Law and Code—the right to recover "one or more dwelling units" for personal use without DHCR approval—should not be recognized in this case because the recovery of all the units in the building would undermine the rent stabilization system. We disagree because the Legislature has determined that an owner's need to recover units for personal use and occupancy as a primary residence is a legitimate exception to the rent stabilization scheme. Plaintiffs' argument that a restriction on the number of units that may be recovered for personal use is more consistent with the rent stabilization scheme is more appropriately directed to the State Legislature.

Finally, contrary to plaintiffs' argument, the statutory scheme provided by the Rent Stabilization Law and Code for owner-occupancy applications does not leave the tenants without any safeguards or remedies. Of critical importance is the "good faith" requirement that compels an owner to prove at trial that he or she possesses an honest intention to use and occupy the recovered apartments for personal use as a primary residence (*Malta* at *16, citing, inter alia, *Axelrod v Duffin*, 154 Misc 2d 310, 313 [App Term, 1st Dept 1992]). This requirement ensures that the court will scrutinize the defendants' plan to determine whether it is genuine and, conversely, it provides the tenants with an opportunity to argue, as they do here, that the number of apartments sought or the defendants' lack of present occupancy cast doubt on their honest intentions. At this juncture, however, none of these arguments can deprive the owner of the right to bring these owner-occupancy proceedings (*see Malta* at *4).

The Code already includes a penalty provision for owners who recover possession of apartments for personal use, but who ultimately do not occupy them for that purpose. RSC § 2524.4 (a) (5) provides that an owner's failure to use the apartment for the intended purpose after the tenant vacates, or who does not continue in occupancy for three years, "may result in a forfeiture of the right to any increases in the legal regulated rent in

the building in which such housing accommodation is contained for a period of three years." Plaintiffs' speculation that the delay in recovering all of the units in the building or in renovating the building will render such penalty nugatory is not a sufficient basis to deprive defendants of their statutory rights. Again, any argument concerning the inadequacy of the statutory penalty is one for the Legislature.

Accordingly, the order of the Supreme Court, New York County (Faviola A. Soto, J.), entered April 14, 2006, which, inter alia, denied defendants' motion for summary judgment and granted plaintiffs' cross motion for summary judgment to the extent of declaring that defendants violated the Rent Stabilization Law and Code by unilaterally attempting to withdraw the entire building from the rental market without DHCR approval and for a permanent injunction restraining defendants from taking any action to cancel or terminate plaintiffs' leases unless and until DHCR approval was obtained, should be reversed, on the law, without costs, defendants' motion for summary judgment granted and the injunctive relief vacated, the cross motion denied, and it is declared that defendants' plan to recover the six remaining stabilized units for owner-occupancy purposes is governed by Rent Stabilization Code § 2524.4 (a) (1), which does not require preapproval by DHCR.

SAXE, J.P., SULLIVAN, WILLIAMS and CATTERSON, JJ., concur.

Order, Supreme Court, New York County, entered April 14, 2006, reversed, on the law, without costs, defendants' motion for summary judgment granted and the injunctive relief vacated, plaintiffs' cross motion for summary judgment denied, and it is declared that defendants' plan to recover the six remaining stabilized units for owner-occupancy purposes is governed by Rent Stabilization Code § 2524.4 (a) (1), which does not require preapproval by DHCR.