[877 NYS2d 285]

MORTON M. HIRSCH, Appellant, v ELAINE STEWART, Respondent, et al., Respondents.

First Department, April 23, 2009

**APPEARANCES OF COUNSEL**

*Silversmith & Veraja, LLP*, New York City (*Robert G. Silversmith* and *Rachel A Siskind* of counsel), for appellant.

*Housing Conservation Coordinators, Inc.*, New York City (*Susan K. Crumiller* of counsel), for respondent.

**OPINION OF THE COURT**

MAZZARELLI, J.P.

On this appeal we must determine whether Rent Stabilization Code (RSC) (9 NYCRR) § 2524.2 (b) requires an owner who seeks to occupy an apartment for his own use, pursuant to RSC § 2524.4 (a), to state the facts underlying his decision in the nonrenewal notice.

Appellant landlord is the owner of the building known as 459 West 43rd Street. Respondent has been a rent-stabilized tenant in apartment 1A in the building for nearly 30 years. In July 2005, the landlord served a notice on the tenant advising her as follows:

> "**PLEASE TAKE NOTICE**, that your lease . . . will expire on October 31, 2005, and that your tenancy is hereby terminated as of October 31, 2005. Furthermore, the landlord will not renew your lease based upon the fact that the Landlord seeks possession of [the apartment] for the Landlord's own use. The Landlord seeks to recover possession of [the apartment] for the personal use and occupancy of himself as his primary residence in the City of New York."

The tenant did not vacate the premises and the landlord commenced a holdover proceeding in Housing Court. Respondent moved to dismiss the petition, arguing that the notice contravened RSC § 2524.2 (b), which provides:

> "Every notice to a tenant to vacate or surrender

possession of a housing accommodation shall state the ground under section 2524.3 or 2524.4 of this Part, upon which the owner relies for removal or eviction of the tenant, *the facts necessary to establish the existence of such ground,* and the date when the tenant is required to surrender possession" (emphasis added).

The tenant argued that the notice was jurisdictionally defective because it merely stated the ground for termination by tracking the language of RSC § 2524.4 (a) (1). That section permits an owner to terminate a tenancy where he

"seeks to recover possession of a housing accommodation for such owner's personal use and occupancy as his or her primary residence in the City of New York and/or for the use and occupancy of a member of his or her immediate family as his or her primary residence in the City of New York."

The tenant asserted that the plain language of RSC § 2524.2 (b) required the landlord to give a fact-based explanation of why the landlord was choosing to rely on that ground.

In opposition to the motion, the landlord argued that the notice as served was sufficient. He claimed that it was proper for an "owner's use" notice to simply track the language of RSC § 2524.4 (a). This, he argued, is because an owner establishes the existence of the "owner's use" ground simply by asserting that he intends to use the apartment for personal use as his primary residence. The landlord maintained that any additional facts in his notice would have been superfluous. He also posited that the tenant should have simply engaged in discovery, instead of moving for dismissal. By doing so, the landlord argued, the tenant would have learned that the landlord has an office in the building on the same floor as the apartment, and that the landlord desired to move into the apartment to shorten his commute to work.

The Housing Court granted the tenant's motion and dismissed the petition. It agreed with the tenant that the landlord's notice of nonrenewal merely tracked the language of RSC § 2524.4 (a) and that a recitation of the facts motivating the landlord's desire to occupy the apartment was required. Appellate Term unanimously affirmed, and this Court granted the landlord's motion for leave to appeal.

This Court has interpreted RSC § 2524.2 (b)[1] pursuant to its "plain language" and held that it must be "enforce[d] . . . as written" (*Berkeley Assoc. Co. v Camlakides*, 173 AD2d 193, 195 [1991], *affd* 78 NY2d 1098 [1991]). Thus, in *Berkeley Assoc. Co.* this Court affirmed the dismissal of a holdover petition in a nonprimary residence case, stating that the assertion in the notice that the tenants " 'do not occupy the Premises as [their] primary residence' simply stated the ground for the nonrenewal. It was not a statement of facts supporting that ground" (*id.* at 194).

Similarly, where the owner is seeking to recover possession of an apartment for his own use and asserts only that he intends to occupy the apartment as his primary residence, he is "simply stat[ing] the ground for the non-renewal." Under *Berkeley Assoc. Co.*, that notice would be insufficient.

However, the landlord in this case asserts that *Berkeley Assoc. Co.* is inapplicable in an "owner's use" case because, he argues, unlike the case of a nonprimary residence, the facts supporting a decision not to renew a tenancy based on "owner's use" are, by necessity, the same as the "ground" for nonrenewal. In other words, the landlord maintains that all that an owner must establish to avail himself of the "owner's use" ground is his intention to recover the apartment for his own use, and to use it as his primary residence. He contrasts this with the nonprimary residence ground, which he notes depends on a showing of facts supporting the owner's allegation that the tenant does not primarily reside in the apartment. Indeed, the landlord claims that it is impossible to provide factual support in an "owner's use" notice because an owner's intent is "a state of mind not necessarily susceptible to a statement of facts."

This argument ignores the plain language of section 2524.2 (b), which does not differentiate among the various types of grounds for terminating a lease. Rather, that section requires a statement of the ground and the facts underlying the ground in "*[e]very* notice to a tenant to vacate or surrender possession of a housing accommodation" (emphasis added). It does not create any exceptions for grounds which may or may not be "fact-intensive."

---

1. The New York State Division of Housing and Community Renewal (DHCR) promulgated the current version of the Rent Stabilization Code pursuant to specific authority delegated to it by the Legislature (*see* L 1985, ch 888, § 2; *Festa v Leshen*, 145 AD2d 49, 54 [1989]).

Moreover, the landlord's position is belied by his own statement in his affidavit opposing the tenant's motion to dismiss the petition. There he identified the facts behind his intent to occupy the apartment, that is, the proximity of the apartment to his office and his desire to live closer to where he worked. Those were precisely the types of facts required by section 2524.2 (b) and which, if proven, "establish the existence of such ground" (*id.*).

The landlord also asserts that when DHCR amended the Rent Stabilization Code in 1987 it tacitly negated any requirement that the notice of nonrenewal in an "owner's use" case state facts which, if proven, suggest that the owner is acting in good faith. This argument arises from the omission of the words "good faith" in RSC § 2524.4 (a) (1), the analog to section 54 of the "Old Code."[2] Section 54 (B) required a landlord to serve a notice before declining to renew a lease where, among other things, "[t]he owner seeks *in good faith* to recover possession of a dwelling unit for his [or her] own personal use and occupancy or for the use and occupancy of his [or her] immediate family" (emphasis added). The landlord also argues that his position is supported by RSC § 2524.4 (a) (5), which had no precursor in the Old Code. It provides that

> "[t]he failure of the owner to utilize the housing accommodation for the purpose intended after the tenant vacates, or to continue in occupancy for a period of three years, may result in a forfeiture of the right to any increases in the legal regulated rent in the building in which such housing accommodation is contained for a period of three years, unless the owner offers and the tenant accepts reoccupancy of such housing accommodation on the same terms and conditions as existed at the time the tenant vacated, or the owner establishes to the satisfaction of the DHCR that circumstances changed after the tenant vacated which prevented the owner from utilizing the housing accommodation for the purpose intended, and in such event, the housing accommodation may be rented at the appropriate guidelines without a vacancy allowance."

---

**2.** The "owner's use" ground was eliminated in 1982, apparently through the inadvertence of the Rent Stabilization Association of New York City, Inc., which at the time was charged with the responsibility to promulgate the Code (*see Rubman v Waller*, 118 Misc 2d 116, 117 [Civ Ct, NY County 1983]). DHCR reinstated the ground when it revised the Code in 1987.

The amendment, the landlord posits, reflects DHCR's realization that an owner's good faith cannot be tested at the time the owner notifies a tenant that he or she intends to occupy an apartment but can only be divined in retrospect, after possession is recovered. This position is purely speculative and the landlord offers no support for it in the legislative history or anywhere else. Moreover, at the same time, the landlord acknowledges that an owner claiming "owner's use" is required to demonstrate his or her good faith at the trial of a holdover proceeding *before* recovering possession. These two positions are diametrically opposed and the landlord makes no attempt to reconcile them. Indeed, the landlord's interpretation of the Code and the case law would permit a legal sleight of hand whereby an owner could conceal the basis for a desire to occupy an apartment until a trial is already in full pitch. Such "trial by ambush" would cut against every notion of fairness found in this State's jurisprudence.

The landlord's interpretation of the amended Code section is unpersuasive for several other reasons. First, nothing in section 2524.4 (a) addresses the requirements for a notice of nonrenewal. Second, this new section is merely a reworking of the Old Code section. The words "good faith" have been removed from the language identifying the grounds in RSC § 2524.4 (a) (1). However, the concept that the owner must act in good faith is clearly embodied in the language of RSC § 2524.4 (a) (5) and accepted by all parties.

The argument that the penalties imposed by RSC § 2524.4 (a) (5) were intended as the sole remedy against a landlord whose intention to use the apartment personally turns out, in retrospect, not to have been genuine, is incorrect. Subsequent to the promulgation of that section, the Court of Appeals and this Court have continued to adhere to the rule that an owner is not entitled to a judgment of possession in the first instance if the owner cannot prove his or her good faith intention *prior* to evicting the tenant. For example, as recently as last year, the Court of Appeals considered the "owner's use" ground in *Pultz v Economakis* (10 NY3d 542 [2008]). The issue in that case was whether RSC § 2524.4 (a), as opposed to section 2524.5 (a) (1) (which requires DHCR approval where the owner seeks to recover the apartment for a business use), applied where the owners desired to recover possession of all of the rent-stabilized apartments in a building so that they could convert them into a single-family dwelling and reside there. The Court held that the former section applied. In so doing, it stated that

"we underscore that [the owners] may not recover the stabilized apartment units unless and until they establish in Civil Court (at holdover proceedings against plaintiffs) their *good faith intention* to recover possession of the subject apartments for the husband owner's personal use as the primary residence" (10 NY3d at 548 [emphasis added]).

The good faith requirement was also referenced by this Court in *Horsford v Bacott* (32 AD3d 310 [2006]). In that case the landlords sought to recover possession of an apartment for use by their daughter. They testified at trial that the need for the apartment was motivated by the fact that other family members were moving into the room occupied by the daughter at their current residence. The issue on appeal was whether the daughter herself had to testify as to her intention to actually occupy the subject apartment. This Court, with two Justices dissenting, upheld the Housing Court's determination that the testimony of the daughter was unnecessary. However, the majority itself reiterated that the burden on the owners was to "prov[e] a *good faith intention* to have their daughter use the apartment" (32 AD3d at 312 [emphasis added]).

The landlord further argues that any factual recitation in an "owner's use" notice would be futile because, unlike the case of a notice to cure, there is no immediate course of action the tenant can take that would be guided by the notice. In other words, the landlord claims that the tenant would be no worse off if she were to simply wait for a holdover trial, at which, through cross-examination of the landlord facilitated by pretrial discovery, she could reveal that the landlord's intentions were not genuine. This argument is contrived and clearly fallacious. First, again, it ignores the plain language of RSC § 2524.2 (b), which requires a statement of the ground and the facts in *"[e]very* notice to a tenant to vacate or surrender possession of a housing accommodation" (emphasis added).

Second, the landlord does not explain why, if he is correct, a factual recitation in a notice terminating a lease based on the ground of nonprimary residence, which he acknowledges is unquestionably required, would not be similarly superfluous. After all, in a nonprimary residence proceeding it is also the case that the tenant cannot cure based on the information contained in the notice. Indeed, the need for facts in an "owner's use" notice is even more compelling than in a nonprimary residence notice, where the tenant knows whether he or she is utilizing the apart-

ment as his or her primary residence. In an "owner's use" case, only the owner knows what his or her true intentions are.

Third, the landlord's argument also fails because discovery is not available as of right in a summary proceeding (CPLR 408; *952 Assoc., LLC v Palmer*, 52 AD3d 236 [2008]). Were a tenant served with a bare bones notice like the one in this case to be denied leave to conduct discovery, he or she would be completely at sea in an ensuing holdover proceeding. The tenant would simply be unable to defend.

Last, the landlord's position is contrary to the notion of judicial economy. The lack of sufficient details to enable a tenant to assess, from the notice, whether the owner has a good faith intention of occupying the apartment would generate a great number of holdover proceedings. A court proceeding would be required in each case for the tenant to confirm whether the nonrenewal notice is worth contesting. Vast resources would be preserved if the tenant could make that assessment upon receipt of the notice.

Finally, the landlord's position has been repeatedly rejected by the Appellate Term, First Department. That court has consistently held in "owner's use" cases that it is not enough for the nonrenewal notice to merely track the language of RSC § 2524.4 (a). For example, in *Isdahl v Pogliani* (22 Misc 3d 14 [2008]), the owners served a notice which merely stated when they acquired the building, and the fact that their daughter intended to occupy the apartment as her primary residence. The court held that the owners' failure to describe the circumstances surrounding their desire to have their daughter occupy the apartment "provided tenant with no more useful information than simply [alleging that the] owners want the apartment for . . . the use of an unnamed family member, the type of unadorned assertion[ ] which fall[s] far short of satisfying the Code's specificity standards" (22 Misc 3d at 15 [internal quotation marks omitted]).

In *Haruvi v Rosen* (10 Misc 3d 137[A], 2005 NY Slip Op 52161[U] [2005]), the owner's notice alleged only that he intended to vacate his apartment a few blocks away and occupy the tenants' apartment as his primary residence. In affirming dismissal of the petition, the Appellate Term stated that the notice "was entirely uninformative as [to] why [landlord] would rather live in the [tenants'] rent stabilized apartment than his current two story residence" (*id*. at *2 [internal quotation marks omitted]). The Appellate Term, Second Department,

recently adopted the First Department's position (*see Giancola v Middleton*, 21 Misc 3d 34 [2008]).

Rather than distinguishing these cases, the landlord boldly states that they were wrongly decided. They were not. In these cases the Appellate Term correctly recognized that the plain language of RSC § 2524.2 (b) requires a nonrenewal notice premised on "owner's use" to afford the tenant enough information to prepare a defense to a subsequent holdover proceeding if he or she does not believe that the owner's intention is genuine. The notice of nonrenewal in this case was facially deficient because it failed to meet this standard.

Accordingly, the order of the Appellate Term of the Supreme Court of the State of New York, First Department, entered on or about May 23, 2007, which affirmed an order of the Civil Court, New York County (Maria Milin, J.), entered on or about May 17, 2006, granting respondent tenant's motion to dismiss the holdover petition, should be affirmed, with costs.

SAXE, FRIEDMAN, ACOSTA and DEGRASSE, JJ., concur.

Order of the Appellate Term of the Supreme Court of the State of New York, First Department, entered on or about May 23, 2007, which affirmed an order of the Civil Court, New York County, entered on or about May 17, 2006, affirmed, with costs.