OPINION OF THE COURT
Gerald Lebovits, J.
In Pultz v Economakis (10 NY3d 542, 548 [2008]), the Court of Appeals interpreted New York City Rent Stabilization Code (RSC) (9 NYCRR) § 2524.4 (a) to allow owners to recover entire buildings in owner’s-use holdover proceedings if they can prove, at trial, their good faith intention to recover the units for their personal use as their primary residence. Petitioners here, like the petitioner in Pultz, seek to recover an entire building. The issue in this owner’s-use proceeding seeking an entire building is what a predicate notice must say before a proceeding may go forward to a trial at which the owner must prove good faith.
In these two owner’s-use proceedings, petitioners seek to recover possession of two apartments, which respondents occupy, in the same building. Respondents move to dismiss the petition. Petitioners cross-move for orders compelling respondents to pay use and occupancy pendente lite. These cases, which present nearly identical issues of fact and law, are consolidated for disposition. For the reasons below, respondents’ motions to dismiss are granted. Because this proceeding is dismissed, petitioners’ cross motion must be denied.
Background
The undisputed facts follow.
Respondents Don Knight and Ray Kenny are the record tenants of a rent-stabilized apartment under a written rental agreement dated January 1, 1994, between them and petitioners’ predecessor, the subject building’s prior owner and landlord. Respondent Eric Sharff is the tenant of another rent-stabilized apartment in the same building under a similar agreement dated August 8, 1994. The leases covering both apartments *862 were extended by renewal lease agreements dated May 1, 2007, between respondents and petitioners’ predecessor for terms expiring on July 31, 2009.
On April 29, 2009, petitioners, including Frederick J. Rudd, became the owners of a four-story (and a roof deck), 13-unit apartment building containing the subject apartments. On April 30, 2009, petitioners served respondents with identical combined predicate termination and nonrenewal notices (Golub notices) declaring their intent to recover respondents’ apartments as part of petitioners’ plan to convert the entire building into a single-family home to be used as Rudd’s primary residence together with Kim Greenberg, his fiancée, and her two children.
Rudd’s plan for the building is contained in paragraph 6 of the predicate Golub notices:
“Frederick J. Rudd Plans to use the Building as follows:
“First Floor — entry hall
“Second Floor — kitchen, living room, dining room with powder room
“Third Floor — three to four bedrooms with bathrooms and family room
“Fourth Floor — master bedroom/was master bathroom, study/office, gym
“Installation of staircase from the fourth floor leading to the roof and roof deck
“Elevator from the first floor to the fifth [roof] floor to be installed.”
The notices go on to state Rudd’s intention to recover the remaining apartments in the building by serving nonrenewal notices on the other tenants in the building as their lease terms expire.
After respondents’ lease terms expired, petitioners brought these holdover proceedings by petitions dated August 6, 2009. Respondents now move to dismiss both petitions on the alleged ground that Rudd’s predicate notices are fatally defective.
Discussion
RSC § 2524.4 (a) (1) provides that an owner is not required to offer a renewal lease to a rent-stabilized tenant if the owner seeks to recover possession of the housing accommodation “for such owner’s personal use and occupancy as his or her primary residence in the City of New York.” Before an owner may law *863 fully exercise the power to decline a renewal lease under RSC § 2524.4 (a) (1), the owner must first provide the tenant with a written nonrenewal notice “at least 90 and not more than 150 days prior to the expiration of the lease term.” (RSC § 2524.2 [c]; accord Golub v Frank, 65 NY2d 900 [1985].) RSC § 2524.2 (b) provides that this notice must state the “ground under section . . . 2524.4 . . . upon which the owner relies for removal or eviction of the tenant, the facts necessary to establish the existence of such ground, and the date when the tenant is required to surrender possession.”
A proceeding brought on the basis of a nonrenewal notice that does not comply with RSC § 2524.2 must be dismissed. (See generally Hirsch v Stewart, 63 AD3d 74 [1st Dept 2009].) To comply with RSC § 2524.2, a notice must state the specific facts that form the basis for nonrenewal. A notice that merely declares an intention to recover the apartment for the owner’s use as the owner’s primary residence is alone insufficient because it states only the ground for nonrenewal and not nonconclusory facts supporting that ground. (Berkeley Assoc. Co. v Camlakides, 173 AD2d 193, 195 [1st Dept 1991], affd 78 NY2d 1098 [1991].) In evaluating the adequacy of facts contained in a notice, the standard is one of “reasonableness in view of all attendant circumstances.” (Hughes v Lenox Hill Hosp., 226 AD2d 4, 17 [1st Dept 1996], lv denied 90 NY2d 829 [1997].)
The question before this court is this: When an owner’s timely nonrenewal notice states the owner’s intention to decline a renewal lease to a rent-stabilized tenant because the owner intends to use the entire building as a primary residence, but the owner indicates no desire to convert any apartment for personal use and occupancy until the entire building is recovered and the notice makes clear that the recovery might not take place for several years, is that notice reasonable in view of all attendant circumstances? This court finds under the circumstances of this case that it is not.
1. Future Contingencies
Respondents’ first major argument is that the Golub notice is improper because it contains facts dependent on future contingencies that might or might not occur. Respondents assert that petitioners’ notice cannot require them to vacate now because of a plan based on uncertain events like removing of multiple tenants from the building, marrying his fiancée, his fiancée and her children moving in with him, and converting the building into a one-family home. According to respondents, the *864 other tenants might not vacate, Rudd might not get married, his fiancée and her children might not move in, and the building might never become a one-family home. But the existence of contingencies does not invalidate a Golub notice if the owner has proposed the plan in good faith. (See Hirsch, 63 AD3d at 79 [“The argument that the penalties imposed by RSC § 2524.4 (a) (5) were intended as the sole remedy against a landlord whose intention to use the apartment personally turns out, in retrospect, not to have been genuine, is incorrect. . . . (A)n owner is not entitled to a judgment of possession in the first instance if the owner cannot prove his or her good faith intention prior to evicting the tenant”].) On a motion to dismiss, this court must assume as true that petitioners intend to use the apartments for the purposes stated in the notice. (E.g. Matter of Foxell v New York City Human Resources Admin., 167 AD2d 126, 127 [1st Dept 1990 mem] [noting that court must accept petition’s factual allegations as true on CPLR 3211 (a) (7) motion to dismiss].) That some facts might conceivably change after a predicate notice is served does not mean that the notice was served in bad faith. Any changed circumstance is an issue of good faith for trial. (Elias v Gravel, Hous Part, Civ Ct, NY County, Mar. 6, 2009, Kaplan, J., index No. 50689/08, at 1.)
Respondents’ argument should also be rejected at the motion-to-dismiss stage because it calls for an unnecessary expansion of the phrase “good faith” in the Golub-notice context. Pretrial arguments attacking contingencies in a Golub notice essentially argue that owners fail to act in good faith when they seek to evict tenants on the basis of Golub notices replete with uncertain facts. Although RSC § 2524.4 (a) contains an implied requirement that an owner act in good faith, this requirement refers to the owner’s good-faith intention to recover possession. (Pultz, 10 NY3d at 548; Hirsch, 63 AD3d at 79; Horsford v Bacott, 32 AD3d 310, 312 [1st Dept 2006].) That is, the “good faith” inquiry asks whether the owner seeks the apartment for the reason or reasons stated in the notice. Agreeing with respondents is tantamount to agreeing that a notice may be served in bad faith even if the owner intends to carry out the stated plan and truly believes that contingencies will unfold as expected. A pretrial challenge to a notice is more properly brought as an argument that the stated plan itself is improper. As discussed below, this court’s reliance on respondents’ second major argument avoids an unnecessary and unsupported expansion of the RSC § 2524.4 (a) good faith requirement.
*865 2. Personal Use and Occupancy
Respondents’ second major argument is that even if petitioners had put their plan forth in good faith, the plan itself does not state a valid ground for declining a renewal lease. The claim is that the facts petitioners stated in their Golub notice do not describe “recovery for personal use and occupancy” within the meaning of RSC § 2524.4 (a) and, as such, are unreasonable under RSC § 2524.2 (b).
A Golub notice complies with RSC § 2524.2 (b) and § 2524.4 (a) if it declares an owner’s intent to occupy the unit immediately after the tenant vacates. Alternatively, the notice may be sufficient if it states an owner’s intention to begin renovating the unit after the tenant vacates, consistent with an architectural plan laid out in advance that can be proved at trial.
The notice in this case is different. It describes a plan to recover apartments now without any plan to occupy or at least begin renovating the units until much later, after the entire building is recovered. Paragraph 6 of the Golub notice describes a plan extensively to transform the entire building’s interior. The next paragraph, paragraph 7, explains Rudd’s intention to serve nonrenewal notices on the other tenants of the building “when possible.” Rudd offers no indication that he intends to either occupy or renovate units, including those of respondents, as they are recovered. This evinces Rudd’s desire to collect and warehouse all the apartments until he is ready to execute his plan. Petitioners’ argument that he has no time frame within which he, or any owner in any owner’s-use case, must move in is an admission to this effect. This court holds that petitioners’ Golub notice is unreasonable under RSC § 2524.2 (b) because, unlike the first two hypothetical notices described above — notices that declare an owner’s intent to occupy the unit immediately after the tenant vacates or which state an owner’s intention to begin renovating the unit after the tenant vacates— the facts it states do not describe “recovery for personal use and occupancy” within the meaning of RSC § 2524.4 (a). This court holds that RSC § 2524.4 (a) requires owners to recover an apartment for personal use and occupancy within a reasonable time after the tenant vacates and that the petitioners’ RSC § 2524.2 (b) notice fails to describe that hoped-for recovery.
Reading RSC § 2524.4 (a) to include a reasonable-time requirement is consistent with the text of the Rent Stabilization Code. RSC § 2524.4 (a) (5) provides that the “failure of the *866 owner to utilize the housing accommodation for the purpose intended after the tenant vacates, or to continue in occupancy for a period of three years, may result in a forfeiture of the right to any increases in the legal regulated rent.” Although this provision is designed to restrict an owner’s ability to charge an increased rent if the unit remains, or reverts back to, a rental unit, it reflects the intent of its drafter, the Division of Housing and Community Renewal (DHCR), that owners be prepared to “utilize” the unit when they ask the tenant to vacate it and when the tenant does vacate it. Although RSC § 2524.4 (a) (5) does not specify how soon “after the tenant vacates,” the most logical reading is that an owner must “utilize” the apartment reasonably quickly after the tenant vacates. An owner who seeks to evict a tenant now but who will not make use of the unit as a residence until all the units in a building are recovered could leave the unit vacant for years. If owners could satisfy section 2524.2 (b) in a section 2524.4 (a) eviction simply by occupying the apartment at some future, unknown time, the section 2524.4 (a) (5) penalty against an owner for “failure ... to utilize . . . after the tenant vacates” would be meaningless. Thus, the language of section 2524.4 (a) (5) reflects the DHCR’s intent that an owner recovering a unit under section 2524.4 (a) do so reasonably quickly after the tenant vacates.
This court rejects Rudd’s argument that “there is no time-frame governing the use and occupancy of the Building.” A Golub notice that states no intention to “utilize” in a reasonable time is an unreasonable Golub notice, because owners are forbidden to declare “an intention ... to warehouse each apartment empty for reconfiguration at some indefinite time.” (Malta v Brown, 12 Misc 3d 1164[A], 2006 NY Slip Op 51028[U], *1 [Hous Part, Civ Ct, NY County, May 31, 2006], cited with approval in Pultz v Economakis, 40 AD3d 24, passim [1st Dept 2007], affd 10 NY3d 542 [2008].)
This court disagrees with respondents’ contention that RSC § 2524.4 requires owners to declare an intention to occupy units immediately. Practical and legitimate considerations necessitate an allowance for owners to effect renovations, but the stated renovations must begin immediately after the tenant vacates and be consistent with an architectural plan laid out in advance that involves the owner’s occupying the unit sought within a reasonable time. What is reasonable will depend on the renovations planned and other fact-specific factors unique to each case.
*867 This court’s conclusion is consistent with the policy goals behind rent stabilization. A primary goal of rent stabilization is to preserve the availability of affordable housing for lower income families. (Administrative Code of City of NY § 26-501 [explaining that “unconscionable rent increases” were contributing to “a continuing restriction of available housing”].) Permitting owners to evict tenants while they wait until an owner recovers the remaining units in a 13-unit building would mean that rent-stabilized tenants unlikely to find comparable housing in New York City will lose their homes, while apartments that would otherwise be available sit unused— warehoused for potentially many years. The inconsistency of that situation with rent stabilization’s overarching policy is manifest.
Petitioners’ Golub notice is an example of a notice that violates both the logical reading of ESC § 2524.4 (a) and the policy goals behind rent stabilization. As petitioners admit, the lease terms for two of the other apartments in the building do not expire until April 30, 2011. The Golub notice proves that petitioners have no intent to begin their plan to convert all floors of the building into a single home — a project that involves building new staircases and an elevator shaft — before petitioners recover the entire building. This could not begin before June 2011. Three tenants — respondents Sharff, Knight, and Kenny — could be evicted from their rent-stabilized apartments only to have their two apartments sit unused and off the market for 21 months at the earliest. This court finds that 21 months under the circumstances is unreasonable. Petitioners’ notices do not, therefore, state a proper claim of owner occupancy under ESC § 2524.4 (a).
Petitioners argue that in Pultz v Economakis (10 NY3d at 548), the Court of Appeals found that the “plain language” of ESC § 2524.4 (a) permits an owner to recover “one or more” rent-stabilized dwelling units, even if recovering multiple units results in the owner’s recovering an entire building. Petitioners then suggest that ruling their notice inadequate in this proceeding contravenes Pultz because it would mean that owners may not recover an entire building unless the lease terms for all units expire on the same day. Petitioners contend that when rent-stabilized leases in a building expire at different times, owners hoping personally to use and occupy an entire building as their home cannot wait for the last lease to expire, because leases expiring sooner must be renewed under ESC § 2524.1.
*868 This argument fails for two reasons. First, although petitioners correctly interpret Pultz, the Court of Appeals in Pultz focused only on whether the language of RSC § 2524.4 (a) permits, as a matter of law, an owner to recover an entire building. It did not deal with the sufficiency of a Golub notice or whether the facts alleged in that notice described use as a primary residence. (See Hirsch, 63 AD3d at 79 [observing that the issue in Pultz “was whether RSC 2524.4 (a), as opposed to section 2524.5 (a) (1) (which requires DHCR approval where the owner seeks to recover the apartment for a business use), applied where the owners desired to recover possession of all of the rent-stabilized apartments in a building so that they could convert them into a single-family dwelling and reside there”].)
Second, this court’s holding leaves it possible, consistent with Pultz, for owners to recover an entire building for their personal use and occupancy, so long as they prove good faith at trial. Owners may, upon recovering a unit, move into it immediately or at least begin renovations that would allow owner occupancy within a reasonable time. Once all the units are recovered, owners are free to gut the building for any major renovations the law permits. Prohibiting owners from collecting and warehousing buildings, and instead requiring them to take quick action toward living in units they recover, will inconvenience owners. But the Rent Stabilization Law and Rent Stabilization Code evince the Legislature’s and the DHCR’s intent to place the interests of rent-stabilized tenants ahead of the convenience of building owners. (See e.g. Administrative Code of City of NY § 26-501 [acknowledging that although a transition back to free bargaining between landlords and tenants is an objective of New York State and City policy, that transition must be “administered with due regard” for the affordable housing “emergency”].) Moreover, other means outside RSC § 2524.4 are available for an owner to recover units and reduce the number of owner’s-use holdover proceedings required to recover an entire building. These include buying out other tenants or other tenants’ voluntary vacatur. (See Bianco v Sciaulino, 26 Misc 3d 780, 782 [Hous Part, Civ Ct, NY County, Nov. 29, 2009] [noting that petitioner’s objective to recover possession of an entire rent-stabilized building could be met by buyout offers, voluntary vacatur, abandonment, or other tenants’ surrender].)
Petitioners cite, in addition to Pultz, a few other cases in which owners prevailed in owner’s-use holdover proceedings even though their stated plans involved recovering an entire *869 building. Like Pultz, however, none of those decisions considered either the sufficiency of the notice or what “personal use and occupancy” means under RSC § 2524.4 (a). In Proctor v Barns, the Appellate Term, First Department, found that the petitioners proved at trial that they acted in good faith in seeking to recover a brownstone building as a one-family residence with a room for an unborn child, even though that child might not ultimately be born. (2002 NY Slip Op 50215[U], *1 [May 29, 2002 per curiam].) But that case concerned the issue of good faith intention, not the notice’s sufficiency. In Sobel v Mauri (NYLJ, Dec. 12, 1984, at 10, col 4 [App Term, 1st Dept per curiam]), the landlord sought to recover an apartment in a five-story brownstone to create a sewing room. The notice in Sobel, however, sought only one unit, and it was not until trial that the landlord testified that her ultimate goal was to recover the entire brownstone. These cases do not address the issue presented for decision in the present case before this court.
This court is aware of Bianco v Sciaulino (26 Misc 3d 780 [2009]). Bianco, like this proceeding, is an RSC § 2524.4 (a) owner’s-use holdover proceeding in which the owner sought to recover possession of the tenant rent-stabilized apartment as part of the owner’s broader effort to convert a nine-apartment building into a single-family home. (26 Misc 3d at 781.) The tenant moved to dismiss, arguing (1) that the proceeding was not ripe for adjudication because the owner would be unable to effectuate the plan until all the apartments were recovered and (2) that other unnamed tenants are necessary parties. (Id. at 781-782.) The Bianco court denied the tenant’s motion. The court first found the owner’s proceeding ripe because a contrary finding would place the owner in the “near impossible situation of having to commence upwards of up to six holdover proceedings simultaneously, or alternatively not disclose his good faith intent to occupy all of the apartments in the subject building.” (26 Misc 3d at 782.) As to the respondent’s second argument, the Bianco court found that it could not determine at the preanswer motion-to-dismiss stage whether including the other tenants was necessary to afford complete relief. (26 Misc 3d at 783.)
The meaning of “personal use and occupancy” under RSC § 2524.4 was not at issue in Bianco. As such, this court finds that Bianco did not decide the issue in this proceeding. To the extent that language in Bianco suggests that the Bianco court believed that notices like the one here are sufficient to evict under RSC § 2524.4, this court respectfully disagrees.
*870 Conclusion
Petitioners’ holdover proceedings must be dismissed. The facts alleged in the predicate nonrenewal notices, which may not be amended, do not support a claim of owner use and occupancy as required by sections 2524.2 and 2524.4 (a) of the Rent Stabilization Code.